UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOLLY MAGALENGO on behalf of her daughter, A.M., a minor,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION, PENNSYLVANIA INTERSCHOLASTIC ATHLETIC ASSOCIATION, INC., QUAKERTOWN COMMUNITY SCHOOL DISTRICT, and COLONIAL SCHOOL DISTRICT,<br><br>*Defendants.* | CASE NO.<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

### I. INTRODUCTION

This is an action arising from a violation of a student's federal constitutional rights occurring at Quakertown Community High School within the Quakertown Community School District. Plaintiff is seeking damages for the Defendants' violation of her rights.

### II. PARTIES

1. A.M. is a student at Quakertown Community High School in the Quakertown Community School District in Quakertown, Pennsylvania. Plaintiff at all times material to this litigation has been, and is presently, a minor child.

2. The Complaint is filed by and through her mother, Holly Magalengo ("Magalengo"), with the consent of A.M.

1

3.  Defendant United States Department of Education ("USDOE") is a federal entity operating under the United Stated Federal Government.

4.  Defendant Quakertown Community School District ("QCSD") is a public school system located in Quakertown, Pennsylvania. QCSD receives federal funds as a public institution and is governed through its Board of Education. QCSD has received federal funding at all times relevant to this litigation.

5.  Defendant Colonial School District ("CSD") is a public school system located in Plymouth Meeting, Pennsylvania. CSD receives federal funds as a public institution and is governed through its Board of Education. CSD has received federal funding at all times relevant to this litigation.

6.  The Pennsylvania Interscholastic Athletic Association, Inc. ("PIAA"), is the governing body of high school and middle school athletics for the Commonwealth of Pennsylvania, in the United States.

7.  Defendant USDOE, through the United States Federal Government and the immense power that it yields, has exerted power and coercion over the other defendants to force them to implement the herein complained of unconstitutional policies.

### III.   JURISDICTION & VENUE

8.  This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States.

9.  Venue in this action is properly in the Eastern District of Pennsylvania because the events relevant to this action occurred primarily within the geographical confines of the Eastern District of Pennsylvania.

## IV.     FACTUAL ALLEGATIONS

10. At all times relevant to this litigation, A.M. was a student at Quakertown Community High School ("QHS") within the Quakertown Community School District ("QCSD").

11. During the 2024-2025 school year, A.M. is a senior and set to graduate in 2025.

12. QCSD has becoming inundated with diversity, equity and inclusion ("DEI") curriculum and enrichment since 2020.

13. A.M. is a member of the QHS girls cross country team.

14. On September 11, 2024, A.M. competed in a cross-country meet at QHS against local high school Plymouth Whitemarsh ("PWMHS").

15. PWMHS is a high school within CSD.

16. A biological male was registered to compete in the biological female cross-country meet.

17. The biological male ("L.A.") is a student at PWMHS.

18. A.M. and L.A. ran competitively against one another during the September 11, 2024, race.

19. The biological male won the race beating out all of the female athletes.

20. L.A. took first in the race, A.M. took second.

21. A.M. stated to L.A. that "You are not a girl. You should not be racing against girls."

22. PWMHS cross country coaching staff complained to QHS coaching staff about A.M. stating "You are not a girl. You should not be racing against girls" and stated they would be reaching out to QHS Athletic Director Brian Laiacona.

23. On September 12, 2024, A.M.'s parents reached out to QHS for support in removing biological males from competing in female sports and protecting female athletes.

24. QHS Athletic Director responded stating, "Different sports organizations and governing bodies have various policies in place to address concerns with yours, aiming to create an environment where all athletes can complete. The PIAA Bylaws in Article XVI Section 4E states: 'Where a student's gender is questioned or uncertain, the decision of the Principal as to the student's gender will be accepted by the PIAA.' The decision for which team their student athlete competes under, is the decision of the Plymouth Whitemarsh SD Administration which we do not control."

25. Dr. Jason Bacani, the principal of Plymouth Whitemarsh High School, decided that the biological male was a biological female and allowed to compete with the females.

26. The Pennsylvania Interscholastic Athletic Association, Inc. ("PIAA"), is one of the governing bodies of high school and middle school athletics for the Commonwealth of Pennsylvania, in the United States.

27. The PIAA took PWMHS's stance that the biological male was in fact a biological female.

28. L.A. is in fact a biological male.

29. QHS, PWMHS and PIAA allowed a biological male to compete against biological female athletes.

30. Women and men are not biologically equal:

> "A stabilization of the gender gap in world records is observed after 1983, at a mean difference of 10.0% ± 2.94 between men and women for all events. The gender gap ranges from 5.5% (800-m freestyle, swimming) to 18.8% (long jump). The mean gap is 10.7% for running performances, 17.5% for jumps, 8.9% for swimming races, 7.0% for speed skating and

>8.7% in cycling. The top ten performers' analysis reveals a similar gender gap trend with a stabilization in 1982 at 11.7%, despite the large growth in participation of women from eastern and western countries, that coincided with later- published evidence of state-institutionalized or individual doping. These results suggest that women will not run, jump, swim or ride as fast as men."

Thibault V, Guillaume M, Berthelot G, Helou NE, Schaal K, Quinquis L, Nassif H, Tafflet M, Escolano S, Hermine O, Toussaint JF. Women and Men in Sport Performance: The Gender Gap has not Evolved since 1983. J Sports Sci Med. 2010 Jun 1;9(2):214-23. PMID: 24149688; PMCID: PMC3761733.

31. On December 13, 2024, A.M was again subjected to violations of her equal protection rights when she had to compete against L.A. in the 4X400 during the DVGTCA Meet.

32. PWMHS and the PIAA again allowed the biological male to race in a women's race providing that L.A. was a female.

33. A.M. was harmed by the Defendants actions.

### IV. CAUSES OF ACTION

**COUNT I – Violations of the Fourteenth Amendment Equal Protection, or as an alternative Fourteenth Amendment Retaliation**
(*Plaintiff vs PIAA, CSD, QCSD*)

34. Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

35. Under 42 U.S.C. §1983, Plaintiffs are protected from violation of right guaranteed to them by the Constitution of the laws of the United States.

5

36. The Equal Protection Clause of the Fourteenth Amendment commands that no state shall deny to any person within its jurisdiction the equal protection of the laws.

37. A.M. is a biological female and a student athlete for QHS running for the female cross-country team.

38. L.A. is a biological male and a student athlete for PWMHS running for the female cross-country team.

39. A.M. and L.A. ran competitively against one another for their schools on September 11, 2024.

40. A.M. was the first biological female to complete the cross-country race for the female cross-country race.

41. L.A., a biological male, was awarded first place in the cross-country race as he outran A.M., a biological female.

42. On December 13, 2024, A.M was again subjected to violations of her equal protection rights when she had to compete against L.A. in the 4X400 during the DVGTCA Meet.

43. PWMHS and the PIAA again allowed the biological male to race in a women's race providing that L.A. was a female.

44. As a result of Defendants' actions, A.M. has been damaged.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a) Enter judgment against Defendants and in favor of Plaintiff for actual damages for the violation of her civil rights, financial loss, physical harm, humiliation, mental anguish, and emotional distress in amounts to be determined at trial and as are allowed under the statute;

(b)     Enter an injunction to prohibit Defendants from further infringement on Plaintiff's constitutional rights;

(c)     Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)     Grant such other and further relief as justice requires.

### COUNT II – *Bivins* –Violations of the Fourteenth Amendment or as an alternative Fourteenth Amendment Retaliation
### (*Plaintiff vs United States Department of Education*)

45. Plaintiff incorporates by reference all prior allegations as if fully restated.

46. A Bivins action is an implied cause of action for damages under the Constitution against federal officials.

47. Under 42 U.S.C. §1983, Plaintiffs are protected from violation of right guaranteed to them by the Constitution of the laws of the United States.

48. The Equal Protection Clause of the Fourteenth Amendment commands that no state shall deny to any person within its jurisdiction the equal protection of the laws.

49. Title IX of the Education Amendments of 1972, 20 U.S.C.S. § 1681 et seq., prohibits discrimination on the basis of sex in any federally funded education program or activity. 20 U.S.C.S. § 1681(a).

50. The Department of Education recently issued a new rule implementing Title IX of the Education Amendments of 1972, which went into effect on August 1, 2024.

51. The rule newly defined sex discrimination to "includ[e] discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity." 89 Fed. Reg. 33886 (2024).

52. The Department of Education's implementation of 89 Fed. Red. 33886 is unconstitutional.

53. A.M. suffered a violation of her constitutional rights under the Equal Protection clause as a result of Defendant United States Department of Education's implementation of 89 Fed. Reg. 33886.

54. A.M. is a biological female and a student athlete for QHS running for the female cross-country team.

55. L.A. is a biological male and a student athlete for PWMHS running for the female cross-country team.

56. A.M. and L.A. ran competitively against one another for their schools on September 11, 2024.

57. A.M. was the first biological female to complete the cross-country race for the female cross-country race.

58. L.A., a biological male, was awarded first place in the cross-country race as he outran A.M., a biological female.

59. On December 13, 2024, A.M was again subjected to violations of her equal protection rights when she had to compete against L.A. in the 4X400 during the DVGTCA Meet.

60. PWMHS and the PIAA again allowed the biological male to race in a women's race providing that L.A. was a female.

61. As a result of Defendants' actions, A.M. has been damaged.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a) Enter judgment against Defendants and in favor of Plaintiff for actual damages for the violation of her civil rights, financial loss, physical harm, humiliation, mental

anguish, and emotional distress in amounts to be determined at trial and as are allowed under the statute;

(b) Enter an injunction to prohibit Defendants from further infringement on Plaintiff's constitutional rights;

(c) Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d) Grant such other and further relief as justice requires.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues stated in this action.

Dated: January 20, 2025

Respectfully Submitted,

/s/ Solomon Radner
Solomon Radner, Esq. (pro hac to be applied for)
THE LAW OFFICE OF KEITH ALTMAN
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48334
Telephone: (248) 987-8929
solomonradner@kaltmanlaw.com

*Attorney for Plaintiff*

/s/ Devon M. Jacob
Devon M. Jacob, Esq.
PA BAR # 89182
Jacob Litigation, Inc.
P.O. Box 837
Mechanicsburg, Pa. 17055-0837
Telephone: (717) 796-7733
DJacob@jacoblitigation.com

*Local Counsel for Plaintiff*