## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HOLLY MAGALENGO on behalf of her daughter, A.M., a minor,** | **Case No. 2:25-cv-00325** |
| *Plaintiff,* | |
| **v.** | |
| **UNITED STATES DEPARTMENT OF EDUCATION, PENNSYLVANIA INTERSCHOLASTIC ATHLETIC ASSOCIATION, INC., QUAKERTOWN COMMUNITY SCHOOL DISTRICT, and COLONIAL SCHOOL DISTRICT,** | |
| *Defendants.* | |

## BRIEF IN SUPPORT OF
## PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

NOW COMES Plaintiff, Holly Magalengo, as Guardian of A.M. by and through her attorneys and states as follows:

### INTRODUCTION

The Plaintiff respectfully moves this Court for a Temporary Restraining Order (TRO) to prevent transgender individuals, including but not limited to L.A., from participating in women's sports within the jurisdiction of the Eastern District of Pennsylvania. This motion is based on the grounds that the Plaintiff is likely to

succeed on the merits, will suffer irreparable harm without the TRO, the balance of harm favors the Plaintiff, and the public interest supports granting the TRO. *Razor Tech., LLC v. Hendrickson*, 2018 U.S. Dist. LEXIS 74918 (E.D.Pa. 2018); *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121 (3d. Cir. 2017).

## LEGAL STANDARD

In the Third Circuit, the standards for granting a TRO are the same as those for a preliminary injunction. The Court must consider whether: (1) the movant has shown a likelihood of success on the merits; (2) the movant will suffer irreparable harm absent the relief sought; (3) that granting preliminary relief will not result in even greater harm to the non-moving party; and (4) the public interest favors granting the injunction. *Everett Labs. v. Vertical Pharms*., 227 Fed. Appx. 124 (3d. Cir. 2007); *Howard v. Chester County Office of Juvenile Prob. & Parole*, 2018 U.S. Dist. LEXIS 229917 (E.D.Pa. 2018).

## ARUGMENT

### I.    Likelihood of Success on the Merits

The Plaintiff must demonstrate a reasonable likelihood of success on the merits of the case. *McFadden v. United States*, 2020 U.S. Dist. LEXIS 179887 (E.D.Pa. 2020); *Fulton Bank, N.A. v. Rausch Creek Land, L.P.* (In re Kimmel's Coal & Packaging, Inc.), 2021 Bankr. LEXIS 3320 (M.D.Pa. 2021). Allowing transgender individuals to participate in women's sports violates the rights of female athletes

under Title IX, which aims to prevent sex-based discrimination in educational programs and activities. *Johnson v. National Collegiate Athletic Ass'n, 108 F.4th 163 (3d Cir. 2024)*.

The Third Circuit has recognized that policies protecting transgender individuals from discrimination serve a compelling state interest and are narrowly tailored to achieve that purpose. However, the Plaintiff contends that humans are irreversibly male and female at birth. The interest of those who seek to view themselves as transgender must be balanced against the rights of female athletes to fair competition.

On January 20, 2025, President Donald J. Trump issued an Executive Order ("EO") titled Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government. <u>Exhibit A.</u> The EO provides in pertinent part: "Across the country, ideologues who deny the biological reality of sex have increasingly used legal and other socially coercive means to permit men to self-identify as women and gain access to intimate single-sex spaces and activities designed for women, from women's domestic abuse shelters to women's workplace showers. This is wrong. Efforts to eradicate the biological reality of sex fundamentally attack women by depriving them of their dignity, safety, and well-being. The erasure of sex in language and policy has a corrosive impact not just on women but on the validity of the entire American system. Basing Federal policy on

truth is critical to scientific inquiry, public safety, morale, and trust in government

itself."

The EO goes on to further state:

"Accordingly, my Administration will defend women's rights and protect freedom of conscience by using clear and accurate language and policies that recognize women are biologically female, and men are biologically male.
Sec. 2. Policy and Definitions. It is the policy of the United States to recognize two sexes, male and female. These sexes are not changeable and are grounded in fundamental and incontrovertible reality. Under my direction, the Executive Branch will enforce all sex-protective laws to promote this reality, and the following definitions shall govern all Executive interpretation of and application of Federal law and administration policy:

(a)    "Sex" shall refer to an individual's immutable biological classification as either male or female. "Sex" is not a synonym for and does not include the concept of "gender identity."

(b)  "Women" or "woman" and "girls" or "girl" shall mean adult and juvenile human females, respectively.

(c)  "Men" or "man" and "boys" or "boy" shall mean adult and juvenile human males, respectively.

(d)  "Female" means a person belonging, at conception, to the sex that produces the large reproductive cell.

(e)  "Male" means a person belonging, at conception, to the sex that produces the small reproductive cell."

## II.    IV. Irreparable Harm

The Plaintiff must show that they will suffer irreparable harm if the TRO is

not granted. *Dice v. Clinicorp, Inc.*, 887 F. Supp. 803 (W.D.Pa. 1995). Irreparable

harm is defined as harm that cannot be adequately compensated by money damages, *Grand Cent. Sanitation v. City of Bethlehem*, 1994 U.S. Dist. LEXIS 15825 (E.D.Pa. 1994); *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100 (3d. Cir 1988).

Allowing transgender individuals, including but limited to L.A. to compete in women's sports will result in unfair competition, potentially depriving female athletes of opportunities for scholarships, recognition, and advancement in their sports careers.

On September 11, 2024, A.M. competed in a cross-country meet at QHS against PWMHS in which she was forced to compete against L.A. L.A. took first in the race, A.M. took second.

On December 13, 2024, A.M was again subjected to violations of her equal protection rights when she had to compete against L.A. in the 4X400 during the DVGTCA Meet.

On February 19, 2025, A.M was again subjected to violations of her equal protection rights when she had to compete against L.A. in the 4x400 during the DVGTCA Tim Hickey Meet of Champions 2025 Jane and David Ott Center, Philadelphia, PA.

Looking at the remaining indoor winter season schedule, there are multiple races in which A.M. is likely to be forced to race against L.A., these include:

March 2, 2025 - PTFCA Indoor State Championship Penn State University, State College, PA - *Dependent on season standings

The spring track season schedule brings forward additional concern, there are again multiple races in which A.M. is likely to be forced to race against L.A., these include:

March 11, 2025 - Tri Scrimmage at Plymouth Whitemarsh where QHS will compete;

March 29, 2025 - PA Track Classic at Plymouth Whitemarsh where QHS will compete;

April 5, 2025 - PW Colonial Classic at Plymouth Whitemarsh, where QHS will compete;

April 11, 2025 - John Heinz Invitational at Upper Moreland HS – likely to have PWMHS and QHS competing;

April 29, 2025 - Quakertown vs. Plymouth Whitemarsh (at PWMHS);

April 24, 2025- April 26, 2025 - Penn Relays.

### III.    Balance of Harms

The Court must also consider the balance of harm between the Plaintiff and the Defendants. The harm to female athletes from allowing transgender individuals to compete in women's sports outweighs any potential harm to transgender athletes

from being excluded from women's sports as these individuals are able to participate in the same sports under their correct sex.

### IV.    Public Interest

Finally, the Court must consider whether granting the TRO is in the public interest. The Plaintiff contends that maintaining the integrity of women's sports and ensuring fair competition is in the public interest. Protecting the rights females and preserving the fair competition in women's sports is at the heart of the protections of Title IX.

### CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that this Court grant the motion for a Temporary Restraining Order to halt biological males from participating in women's sports. The Plaintiff has demonstrated a likelihood of success on the merits, irreparable harm, a favorable balance of harm, and that the public interest supports granting the TRO. *Republican Party of Pa. v. Cortés*, 218 F. Supp. 3d 396 (E.D.Pa. 2016); *Depinto v. Bayonne Bd. of Educ.*, 514 F. Supp. 2d 633 (D.NJ. 2007).

Dated: February 25, 2025                    Respectfully submitted,

/s/ Solomon Radner
Solomon Radner, Esq. (admitted pro hac vice)
THE LAW OFFICE OF KEITH ALTMAN
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48334
Telephone: (248) 987-8929
solomonradner@kaltmanlaw.com

*Attorney for Plaintiff*


Devon M. Jacob, Esq.
PA BAR # 89182
Jacob Litigation, Inc.
P.O. Box 837
Mechanicsburg, Pa. 17055-0837
Telephone: (717) 796-7733
DJacob@jacoblitigation.com

*Local Counsel for Plaintiff*