IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HOLLY MAGALENGO on behalf of her   :
daughter, A.M., a minor,   :
  :
      Plaintiff   :
  :
  :
      v.   : NO. 2:25-CV-00325
  :
UNITED STATES DEPARTMENT OF   :
EDUCATION, PENNSYLVANIA   :
INTERSCHOLASTIC ATHLETIC   : JURY TRIAL DEMANDED
ASSOCIATION, INC., QUAKERTOWN   :
COMMUNITY SCHOOL DISTRICT,   :
and COLONIAL SCHOOL DISTRICT,   :
  :
      Defendants   :

**BRIEF OF DEFENDANT PENNSYLVANIA INTERSCHOLASTIC ATHLETIC
ASSOCIATION, INC. IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT**

McNEES WALLACE & NURICK LLC
Dana W. Chilson
PA I.D. No. 208718
Austin D. Hughey
PA I.D. No. 326309
100 Pine Street, P.O. Box 1166
Harrisburg, PA 17108-1166
(717) 232-8000
dchilson@mcneeslaw.com
ahughey@mcneeslaw.com

Dated: April 11, 2025            *Counsel for Defendant Pennsylvania Interscholastic
Athletic Association, Inc.*

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................ ii

**I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY** ................................... 1

**II.    STATEMENT OF THE QUESTION INVOLVED** ...................................................... 3

**III.    ARGUMENT** ......................................................................................................... 3

    A.    Standard of Review of Motion to Dismiss ............................................................. 3

    B.    Magalengo Failed To State A Claim Against PIAA Upon Which Relief
        Can Be Granted Under 42 U.S.C. § 1983. ............................................................. 5

    C.    Magalengo Failed To State A Claim Against PIAA Under The Fourteenth
        Amendment Of The United States Constitution Upon Which Relief Can Be
        Granted. ................................................................................................................... 6

    D.    Retaliation Is Not Actionable Under the Fourteenth Amendment ......................... 9

    E.    Magalengo Cannot Amend Her Complaint To State A Claim Against PIAA
        Under The Fourteenth Amendment Of The United States Constitution Upon
        Which Relief Can Be Granted. ............................................................................... 10

**IV.    CONCLUSION** ..................................................................................................... 11

## **TABLE OF AUTHORITIES**

**Cases**

*Alston v. Wenerowicz*, 167 F. Supp. 3d 714 (E.D. Pa. 2016).............................................. 4

*Andrews v. Philadelphia*, 895 F.2d 1469 (3d Cir. 1990) ................................................... 7

*Angstadt v. Mid-W. Sch. Dist.*, 377 F.3d 338 (3d Cir. 2004) ............................................ 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................. 4

*Bassett v. Pa. Interscholastic Athletic Ass'n, Inc.*, 2022 WL 420594 (W.D. Pa. 2022) ................ 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................... 3, 4

*Bennett v. Republic Servs., Inc.*, 179 F. Supp. 3d 451 (E.D. Pa. 2016) ...................... 3, 4

*Boyd v. Ill. State Police*, 384 F.3d 888 (7th Cir. 2004).................................................. 10

*Brennan v. City of Philadelphia*, 2018 WL 4566134 (E.D. Pa. 2018) ............................ 9

*Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245 (3d Cir. 2014) ........................... 10

*Chapman v. Pa. Interscholastic Athletic Ass'n*, 2014 WL 2770699 (M.D. Pa. 2014) .................. 5

*Commonwealth of Pa. v. Pa. Interscholastic Athletic Ass'n*
    (Pa. Cmwlth., No. 1526 C.D. 1973, filed Aug. 27, 2013) .......................................... 9

*Dunmore Sch. Dist. v. Pa. Interscholastic Athletic Ass'n*,
    505 F. Supp. 3d 447 (M.D. Pa. 2020) ......................................................................... 5

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009)......................................... 5, 8

*Friedman v. Lansdale Parking Auth.*, 151 F.R.D. 42 (E.D. Pa. 1993) ........................... 4

*Greiser v. Drinkard*, 516 F. Supp. 3d 430 (E.D. Pa. 2021) ........................................ 10

*Hiester v. Fischer*, 113 F. Supp. 2d 742 (E.D. Pa. 2000) ............................................. 7

*Hynoski v. Columbia Cnty. Redevelopment Auth.*, 941 F. Supp. 2d 547 (M.D. Pa. 2013)............. 6

*Keenan v. City of Philadelphia*, 983 F.2d 459 (3d Cir. 1992) ...................................... 7

*Kent v. Henderson*, 77 F. Supp. 2d 628 (E.D. Pa. 1999) ...................................... 7, 8, 10

*Morales v. Wetzel*, 519 F. Supp. 3d 186 (E.D. Pa. 2021) ............................................. 4

*Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340 (3d Cir. 2012) ............. 5

*Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892 (3d Cir. 2021) ...................................................... 4

*One Three Five, Inc. v. City of Pittsburgh*, 951 F. Supp. 2d 788 (W.D. Pa. 2013) ....................... 6

*Pokrandt v. Shields*, 773 F. Supp. 758 (E.D. Pa. 1991) ................................................................... 5

*R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427 (6th Cir. 2005) ....................................... 10

*Ratliff v. DeKalb County*, 62 F.3d 338 (11th Cir. 1995) ............................................................... 10

*Robinson v. City of Pittsburgh*, 120 F. 3d 1286 (3d Cir. 1997) ...................................................... 7

*Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141 (3d Cir. 2005) ......................... 7

*Tatel v. Mt. Lebanon Sch. Dist.*, 637 F. Supp. 3d 295 (W.D. Pa. 2022) ........................................ 8

*Thomas v. Indep. Twp.*, 463 F.3d 285 (3d Cir. 2006) ..................................................................... 9

*Watkins v. Bowden*, 105 F.3d 1344 (11th Cir. 1997) ...................................................................... 9

**Constitutional Provisions & Statutes**

42 U.S.C. § 1983 ............................................................................................................... 1, 5, 6, 8

U.S. CONST. amend XIV ...................................................................................................... 6, 9, 10

**Rules & Regulations**

Fed. R. C. P. 12 ....................................................................................................................... 3, 4, 5

Fed. R. C. P. 8 ................................................................................................................................ 3

Defendant Pennsylvania Interscholastic Athletic Association, Inc. ("PIAA"), by and through its counsel, McNees Wallace & Nurick LLC, hereby submits this Brief in support of its Motion to Dismiss the Complaint filed by Plaintiff Holly Magalengo on behalf of A.M., a minor ("Magalengo"). For the reasons set forth in the Motion to Dismiss, as well as the reasons set forth below, the Motion to Dismiss should be granted and the Complaint dismissed with prejudice.

## I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

On January 20, 2025, Magalengo initiated this action by filing a Complaint against the United States Department of Education ("Department of Education"),[1] PIAA, Quakertown Community School District ("Quakertown"), and Colonial School District, which is the school district for Plymouth Whitemarsh High School ("PWMHS") (together, "Colonial"). (ECF No. 1). The Complaint sets forth two claims, one of which was against the Department of Education, only. The remaining claim (Count I) is asserted against the remaining Defendants under 42 U.S.C. § 1983 ("Section 1983") for purported violations of the Fourteenth Amendment to the United States Constitution.

In her Complaint, Magalengo alleges nominal facts, as follows. A.M., a "biological female," is a senior at Quakertown Community High School and competes as a member of the school's girls' cross-country team. (ECF No. 1, Complaint ¶¶ 37, 11). On September 11, 2024, A.M. competed in a cross-country meet at PWMHS against L.A., a "biological male." (ECF No. 1, Complaint ¶¶ 14, 17). L.A. placed first in the race while A.M. placed second. (ECF No. 1, Complaint ¶ 20).

---

[1]    The Department of Education was dismissed from this action by Order dated March 4, 2025. (ECF No. 22).

After the race, A.M.'s parents reached out to Quakertown "for support in removing biological males from competing in female sports and protecting female athletes." (ECF No. 1, Complaint ¶ 23). Quakertown's athletic director responded by explaining that interscholastic athletic "governing bodies have various policies in place" aimed at "create[ing] an environment where all athletes can compete" and cited, as applicable in this instance, PIAA's Mixed Gender Participation Policy located at Article XVI, Section 4, Paragraph E of PIAA's Bylaws. (ECF No. 1, Complaint ¶ 24). At the time the Complaint was filed, PIAA's Mixed Gender Participation Policy provided that "[w]here a student's gender is questioned or uncertain, the decision of the Principal as to the student's gender will be accepted by the PIAA." (ECF No. 1, Complaint ¶ 24). According to Magalengo, the Principal of PWMHS "decided that the biological male was a biological female and allowed to compete with the females." (ECF No. 1, Complaint ¶ 25).

Subsequent thereto, on December 13, 2024, A.M. and L.A. again competed against each other during a meet. (ECF No. 1, Complaint ¶ 31).

Based upon the foregoing, Magalengo brings a claim under Section 1983 against PIAA, Quakertown, and Colonial for purported violations of the Fourteenth Amendment to the United States Constitution. Magalengo submits that it was a violation of A.M.'s "equal protection rights" for A.M. to have to compete against L.A. at the meets on September 11, 2024 and December 13, 2024, and that A.M. was "damaged" "[a]s a result of Defendants' actions." (ECF No. 1, Complaint ¶¶ 31, 42). Plaintiff further states that "PIAA took PWMHS's stance that the biological male was in fact a biological female." (ECF No. 1, Complaint ¶ 27).

Although making the conclusory allegation of harm, Magalengo does not set forth in the Complaint how A.M. was purportedly damaged. Nonetheless, Magalengo seeks damages for

"financial loss, physical harm, humiliation, mental anguish, and emotional distress." (ECF No. 1, Complaint at Wherefore Clause (a)). Additionally, Magalengo seeks an "injunction to prohibit Defendants from further infringement on [A.M.]'s constitutional rights," an award "for all costs sustained in connection with the prosecution of this action, including attorneys' fees," and "such other relief as justice requires." (ECF No. 1, Complaint at Wherefore Clause (b)-(d)).

Colonial filed a Motion to Dismiss Magalengo's Complaint on March 28, 2025. (ECF No. 26). PIAA now submits this timely Brief in support of its own Motion to Dismiss.

## II.    STATEMENT OF THE QUESTION INVOLVED

(1)    Whether Count I of Magalengo's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief should be granted as to PIAA?

Suggested Answer: *Yes*

## III.    ARGUMENT

A.    Standard of Review of Motion to Dismiss

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. C. P. 8(a)(2). "[A] plaintiff's obligation to provide the grounds of [her] entitle[ment] to relief requires more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a plaintiff must set forth "factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bennett v. Republic Servs., Inc.*, 179 F. Supp. 3d 451, 454 (E.D. Pa. 2016) (quoting *Bell Atl. Corp.,* 550 U.S. at 555). "[W]here a plaintiff's 'plain statement' lacks enough substance to show that she is entitled to relief," the plaintiff's complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). *Alston v. Wenerowicz*, 167 F. Supp. 3d 714, 716 (E.D.

Pa. 2016).  Rule 12(b)(6) specifically provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. C. P. 12(b)(6).

A motion to dismiss filed under Rule 12(b)(6) "tests the sufficiency of the complaint." *Friedman v. Lansdale Parking Auth.*, 151 F.R.D. 42, 43 (E.D. Pa. 1993).  In considering whether to grant a motion to dismiss, courts must "determine whether the complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Morales v. Wetzel*, 519 F. Supp. 3d 186, 189 (E.D. Pa. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*, 556 U.S. at 678.  Stated differently, "[t]o survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient 'to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'"  *Bennett*, 179 F. Supp. 3d at 454 (quoting *Bell Atl. Corp.*, 550 U.S. at 555). In other words, "[s]omething more than a mere possibility of a claim must be alleged[.]"  *Alston*, 167 F. Supp. at 716.

The Third Circuit requires a three-step analysis to determine whether a complaint sets forth sufficient factual allegations to support a claim.  *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903-04 (3d Cir. 2021).  The three-step analysis requires courts to:  (1) "tak[e] note of the elements a plaintiff must plead to state a claim;" (2) "identify allegations that . . . 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s];'" and (3) evaluate whether the "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief."  *Id.* at 904 (citations omitted).  In evaluating whether the factual allegations support the claim for relief, courts "accept all of the complaint's well-pleaded facts as true, but

may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

A motion to dismiss filed under Rule 12(b)(6) "should be granted when it appears to a certainty that no relief can be granted under any set of facts which could be proved." *Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 350 (3d Cir. 2012).

B.    Magalengo Failed To State A Claim Against PIAA Upon Which Relief Can Be Granted Under 42 U.S.C. § 1983.

Magalengo asserts a claim against PIAA under 42 U.S.C. § 1983. (ECF No. 1, Complaint ¶ 35). "In order to state a viable [S]ection 1983 claim, [a] plaintiff must plead two essential elements with specificity: (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that [the] defendant's conduct deprived [the] plaintiff of a right, privilege, or immunity secured by the United States Constitution or law of the United States." *Pokrandt v. Shields*, 773 F. Supp. 758, 765 (E.D. Pa. 1991). Thus, to prevail at the motion to dismiss stage, Magalengo must have alleged facts in the Complaint sufficient to establish that PIAA, acting under color of state law[2], deprived A.M. of a right, privilege, or immunity secured by the Constitution or law of the United States.

It is well-established "that there is no constitutional right to participate in interscholastic athletic programs." *Dunmore Sch. Dist. v. Pa. Interscholastic Athletic Ass'n*, 505 F. Supp. 3d 447, 463 (M.D. Pa. 2020); *see also Angstadt v. Mid-W. Sch. Dist.*, 377 F.3d 338, 344 (3d Cir. 2004) (recognizing that "no property interest exists in participation in extracurricular activities, including sports, as a general principle, under the United States Constitution."); *Chapman v. Pa. Interscholastic Athletic Ass'n*, 2014 WL 2770699, at *7 (M.D. Pa. 2014); *Bassett v. Pa.*

---

[2]    PIAA, like any other person or entity under certain circumstances, has been deemed a state actor acting under the color of state law. *See, e.g., Holmes v. Pa. Interscholastic Athletic Ass'n*, 2006 WL 8458627, *5-6 (E.D. Pa. 2006).

*Interscholastic Athletic Ass'n, Inc.*, 2022 WL 420594, at *9 (W.D. Pa. 2022). Magalengo's claim arises from A.M.'s participation in interscholastic athletic programs. As A.M. has no right to participate in interscholastic athletic programs, she cannot maintain a Section 1983 claim arising from her participation in interscholastic athletic programs. *One Three Five, Inc. v. City of Pittsburgh*, 951 F. Supp. 2d 788, 809 (W.D. Pa. 2013) ("[A] plaintiff cannot prevail without establishing an underlying violation of a federal constitutional or statutory right."). This is particularly true when A.M.'s complaint is not that she was not permitted to participate in athletics, but rather she merely disagreed she should have to compete against a specific opponent. Under the facts plead and the claim asserted, Magalengo cannot show violation of a constitutional right because A.M. has no right to an athletic opponent of her choice. As such, Magalengo's claims should fail on that basis alone and the Complaint should be dismissed with prejudice.

C.    Magalengo Failed To State A Claim Against PIAA Under The Fourteenth Amendment Of The United States Constitution Upon Which Relief Can Be Granted.

Even if this Court determines that Plaintiff has at the very least asserted the basic elements for relief under a 42 U.S.C. § 1983 claim, Magalengo has not alleged facts to demonstrate deprivation of A.M.'s right to equal protection as alleged. (ECF No. 1, Complaint ¶¶ 31, 42). The Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. "A traditional Fourteenth Amendment equal protection claim requires plaintiffs to plead, among other things, that they are members of a protected class or group." *Hynoski v. Columbia Cnty. Redevelopment Auth.*, 941 F. Supp. 2d 547, 566 (M.D. Pa. 2013). Furthermore, "[t]o bring a successful claim under [Section 1983] for a denial of equal protection, [a] plaintiff[] must prove the existence of

purposeful discrimination" by demonstrating that she "receiv[ed] different treatment from that received by other individuals similarly situated." *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992) (quoting *Andrews v. Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990)).

Although Magalengo does not specifically allege she is a member of a protected class, she does indicate that she is a "biological female"; thus, her claim against PIAA, Quakertown, and Colonial is based on the assertion that it was violative of the Constitution for A.M., as a "biological female," to have to compete against a transgender female student.  (ECF No. 1, Complaint ¶¶ 37-42).  Therefore, A.M. alleges she was discriminated against based upon her sex or gender.  To prevail on a claim of sex or gender discrimination, "a plaintiff must show that any disparate treatment was based upon h[er] gender" or sex.  *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005); *see also Hiester v. Fischer*, 113 F. Supp. 2d 742, 746 (E.D. Pa. 2000) ("In order to prevail on an equal protection claim for sex discrimination, a female plaintiff must prove 'that she was subjected to "purposeful discrimination" because of her sex.'" (quoting *Robinson v. City of Pittsburgh*, 120 F. 3d 1286, 1293 (3d Cir. 1997))).  Stated differently, "a female plaintiff bears the burden of showing that her 'sex was a substantial factor in the discrimination and that if she had been a male, she would not have been treated in a similar manner.'"  *Id.* at 747 (quoting *Kent v. Henderson*, 77 F. Supp. 2d 628, 635 (E.D. Pa. 1999)).

Magalengo does not explicitly allege in the Complaint that A.M. was the victim of purposeful discrimination or that she received different treatment from similarly situated individuals, nor does Magalengo allege facts that could support a finding that A.M. was the victim of purposeful discrimination or that she received different treatment from similarly situated individuals.  Instead, Magalengo's claim against PIAA is based on the bald assertion that

A.M. was "subjected to violations of her equal protection rights" when she had to compete against L.A. at two separate meets on September 11, 2024 and December 13, 2024.  (ECF No. 1, Complaint ¶¶ 31, 42).  Magalengo's "conclusory allegations that" PIAA "violated [A.M.'s] constitutional rights are not actionable" under Section 1983.  *Tatel v. Mt. Lebanon Sch. Dist.*, 637 F. Supp. 3d 295, 332-33 (W.D. Pa. 2022).  Furthermore, "conclusory or 'bare-bones' allegations," such as Magalengo's here, will not "survive a motion to dismiss."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Accordingly, the Complaint should be dismissed because Magalengo does not set forth any facts to support the claim under Section 1983 that A.M.'s equal protection rights under the Fourteenth Amendment were violated.

Additionally, setting aside for a moment Magalengo's failure to plead facts to support the claim that A.M. was deprived of her constitutional right to equal protection, Magalengo cannot show that if A.M. "had been a male, she would not have been treated in a similar manner."  *Kent*, 77 F. Supp. 2d at 635.  Again, PIAA's Mixed Gender Participation Policy, located at Article XVI, Section 4, Paragraph E of PIAA's Bylaws, at the time the Complaint was filed, provided that "[w]here a student's gender is questioned or uncertain, the decision of the Principal as to the student's gender will be accepted by the PIAA."  (ECF No. 1, Complaint ¶ 24).  The policy is sex/gender neutral.  The policy would allow a transgender male to compete with cisgender males in interscholastic athletic competitions.  Further, the determination of such is the same for every student athlete, in that the student's principal makes such determination.  PIAA does not become involved with such determination in any way.  Therefore, even if Magalengo had pleaded facts to support the claim against PIAA, the claim would still fail as a matter of law because Magalengo cannot show disparate treatment based upon sex or gender.

Rather, Magalengo seeks to "categorically bar[] a particular gender from participating on an interscholastic athletic team." *Commonwealth of Pa. v. Pa. Interscholastic Athletic Ass'n* (Pa. Cmwlth., No. 1526 C.D. 1973, filed Aug. 27, 2013), slip op. at 7.[3]    Pennsylvania's Commonwealth Court has recognized that "any such policy may be challenged in a court of law on equal protection grounds." *Id.*  Thus, the remedy Magalengo appears to seek may itself be violative of the law.

    D.    <u>Retaliation Is Not Actionable Under the Fourteenth Amendment.</u>

In addition to the claim that A.M.'s equal protection rights were violated, Magalengo purports to bring an alternative claim under the Fourteenth Amendment for retaliation.  (ECF No. 1, Complaint at 5).  Although this alternative claim is set forth in the heading of Count I of the Complaint, it is not otherwise discussed or referenced anywhere else in the Complaint. Furthermore, there do not appear to be any factual allegations in support of the claim.  More importantly though, the Third Circuit does not recognize retaliation claims as actionable under the equal protection clause.  *Thomas v. Indep. Twp.*, 463 F.3d 285, 298 n.6 (3d Cir. 2006) (setting forth that "[a] pure or generic retaliation claim [] simply does not implicate the [e]qual [p]rotection [c]lause.") (quoting *Watkins v. Bowden*, 105 F.3d 1344, 1354-55 (11th Cir. 1997)); *Brennan v. City of Philadelphia*, 2018 WL 4566134, at *6 (E.D. Pa. 2018).  As this Court has recognized, the Third Circuit's opinion that retaliation is not actionable under the Fourteenth Amendment is consistent with the majority of the other circuits that have considered this question.  *Brennan*, 2018 WL 4566134, at *6 (setting forth that most circuits "which have considered this question have held that there is no authority for a retaliation claim under the [e]qual [p]rotection [c]lause of the Fourteenth Amendment.") (citing *R.S.W.W., Inc. v. City of*

---

[3]    The Commonwealth Court's decision is appended hereto as "Appendix A."

*Keego Harbor*, 397 F.3d 427, 440 (6th Cir. 2005) ("[Plaintiff's] retaliation claim does not . . . arise under the [e]qual [p]rotection [c]lause."); *Boyd v. Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004); *Ratliff v. DeKalb County*, 62 F.3d 338, 340 (11th Cir. 1995) ("The right to be free from retaliation [for making complaints of discrimination] is clearly established as a first amendment right and as a statutory right under Title VII; but no clearly established right exists under the equal protection clause to be free from retaliation.")).

Accordingly, regardless of the lack of facts supporting the claim, Magalengo's retaliation claim fails as a matter of law as retaliation is not actionable under the Fourteenth Amendment.

E.    <u>Magalengo Cannot Amend Her Complaint To State A Claim Against PIAA Under The Fourteenth Amendment Of The United States Constitution Upon Which Relief Can Be Granted.</u>

As to Magalengo's equal protection claim, again, Magalengo cannot show that if A.M. "had been a male, she would not have been treated in a similar manner." *Kent*, 77 F. Supp. 2d at 635. PIAA's policy is sex/gender neutral. The policy would allow a transgender male to compete with cisgender males in interscholastic athletic competitions. Further, the determination of such is the same for every student athlete, in that the student's principal makes such determination. PIAA does not become involved with such determination in any way. Thus, Magalengo's equal protection claim fails as a matter of law. So too does her retaliation claim because it is not actionable under the Fourteenth Amendment. Given that any amended claim against PIAA "would not survive a motion to dismiss for failure to state a claim," Magalengo should not be granted leave to amend her Complaint. *Greiser v. Drinkard*, 516 F. Supp. 3d 430, 436 (E.D. Pa. 2021) (quoting *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014)).

Thus, Magalengo's claims should be dismissed with prejudice since she cannot possibly amend the Complaint to assert facts upon which she could get the requested relief in this situation.

## IV.    CONCLUSION

For the reasons set forth above, as well as the reasons set forth in PIAA's Motion to Dismiss, PIAA respectfully requests the Court grant its Motion to Dismiss and dismiss Magalengo's Complaint with prejudice.

Respectfully submitted,

McNEES WALLACE & NURICK LLC

By: _____

Dana W. Chilson
PA I.D. No. 208718
Austin D. Hughey
PA I.D. No. 326309
100 Pine Street, P.O. Box 1166
Harrisburg, PA 17108-1166
(717) 232-8000
dchilson@mcneeslaw.com
ahughey@mcneeslaw.com

Dated:  April 11, 2025

*Counsel for Defendant Pennsylvania Interscholastic Athletic Association, Inc.*

11

**APPENDIX A**

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, by          :
Israel Packel, Attorney General,          :
                            Plaintiff     :
                                          :
              v.                          :        No. 1526 C.D. 1973
                                          :
Pennsylvania Interscholastic Athletic     :
Association, An Unincorporated            :
Association,                              :
                            Defendant     :

BEFORE:  HONORABLE P. KEVIN BROBSON, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE BROBSON              FILED:  August 27, 2013


         In 1973, the Commonwealth of Pennsylvania, acting through

then-Attorney General Israel Packel, commenced an action in this Court's original

jurisdiction, challenging the constitutionality of Article XIX, Section 3B of the

bylaws of the of the Pennsylvania Interscholastic Athletic Association, Inc.

(PIAA), which provided:

              Girls shall not compete or practice against boys in any
              athletic contest.

This Court, sitting *en banc*, concluded that Section 3B was unconstitutional on its

face under Article I, Section 28 of the Pennsylvania Constitution, referred to as the

Pennsylvania Equal Rights Amendment (ERA).[1]    *Commonwealth v. Pa.*

_____

[1] The ERA provides: "Equality of rights under the law shall not be denied or abridged in
the Commonwealth of Pennsylvania because of the sex of the individual." Pa. Const. art. 1,
§ 28.

*Interscholastic Athletic Ass'n*, 334 A.2d 839 (Pa. Cmwlth. 1975) (en banc) (*PIAA I*).  In addition to declaring the bylaw unconstitutional, the Court ordered PIAA "to permit girls to practice and compete with boys in interscholastic athletics." *Id.* at 843.

On November 30, 2012, this Court issued an Order re-opening this matter at the request of the Office of Attorney General (Attorney General) and PIAA.  PIAA has since filed a motion, asking this Court to modify its order in *PIAA I* to allow PIAA to prohibit boys from participating in certain sports that PIAA classifies as being for girls.[2]  In its motion, PIAA alleges that though the issue in *PIAA I* focused on limitations placed on the ability of girls to play on sport teams limited exclusively to boys, "the breadth of the . . . [i]njunction has been interpreted by the parties to bar PIAA from prohibiting boys and girls playing together, regardless of whether a sport is classified as being for boys or girls." (PIAA Motion ¶ 6.)

PIAA raises several reasons in support of its request that it be allowed to restrict the participation of boys on girls' teams.  It notes differences in height and weight between the average male and female high school athlete, pointing out how these "real" differences have led to rule modifications between male and female versions of the same high school sport (*e.g.*, lower net in volleyball, smaller basketball, shorter difference from tee to green in golf, etc.).  It claims that "[i]n all measurable athletic competitions, high school males, as a group, dramatically outperform females." (*Id.* ¶ 42.)  As an example, PIAA notes that to even qualify to compete against boys in the PIAA track and field championship, a high school

---

[2] According to PIAA's motion, for competitive purposes PIAA classifies teams by (a) age of the participants, (b) gender, and (c) enrollment size of the school. (PIAA Motion ¶ 19.)

2

female would need to break a female state record. (*Id.* ¶ 43.) It also claims that in cross-country running, in 2012, 75% of all male athletes finished ahead of the fastest female athlete.

PIAA notes that since 1973, female participation in interscholastic athletics in the Commonwealth has dramatically increased. (*Id.* ¶ 48.) PIAA alleges that 95% of all female athletes participate in sport classifications designated for female student athletes only. Since this Court's decision in *PIAA I*, PIAA claims that some male athletes have chosen to play on sport teams limited by classification to female student athletes. (*Id.* ¶¶ 49-50.) PIAA argues, however, that unlike allowing girls to compete with boys in sports classified exclusively for boys, allowing boys to compete in sports classified for girls, where the rules of the game may take into account physiological differences between boys and girls (*e.g.*, lower net in volleyball), "defeats the purpose of separate classifications, reducing participation opportunities for girls, providing teams using boys with unfair competitive advantages, and enhancing risks of injuries for girls." (*Id.* ¶ 52.) Without limitations, PIAA contends, the reasons for even maintaining separate gender classifications for any or all sport teams is questionable. (*Id.* ¶¶ 53, 54.)

To address its concern, PIAA seeks a modification of this Court's Order in *PIAA I* to allow PIAA to prohibit boys from participating on sport teams classified as being solely for female athletes. PIAA argues that there is no lesser means to address its concerns, such as restricting boys to playing certain positions or requiring boys to play less aggressively. These alternatives, PIAA claims, would be unfairly discriminatory to the male athlete. PIAA also claims that a student-by-student assessment would be "complex and . . . not realistic." (*Id.* ¶¶ 58-64.) PIAA contends:

3

> If gender based classifications are to be permitted, then PIAA should be allowed to enforce the separation where the failure to do so would reduce playing opportunities for the other gender, would provide one gender with significant unfair competitive advantages and would enhance the risk of serious injuries to participants of the other gender.

(*Id.* ¶ 65.)

The Attorney General has filed a response in opposition to PIAA's motion. Though not a paragraph-by-paragraph response, the Attorney General contends that PIAA is seeking to re-litigate arguments raised and rejected by this Court in *PIAA I*, but this time under the guise of boys playing on girls' teams. "Pursuant to the ERA," the Attorney General contends, "refusing to permit boys to play on girls' teams is indistinguishable from the refusal to permit girls to play on boys' teams; both are unconstitutional." (*Id.* ¶ 10.) "The ERA requires athletic equity, and prohibiting boys from playing on girls' teams due to averages and generalizations regarding gender characteristics and stereotypes violates the ERA." (*Id.* ¶ 22.)

At issue in *PIAA I* was a PIAA bylaw provision that categorically barred girls from competing or practicing against boys. The Court's and the parties' focus, then, was fixed on the interest of girls seeking to participate on sport teams that PIAA designated as being solely for boys:

> The PIAA seeks to justify the challenged By-Law on the basis that men generally possess a higher degree of **athletic** ability in the traditional sports offered by most schools and that because of this, girls are given greater **opportunities** for participation if they compete exclusively with members of their own sex. This attempted justification can obviously have no validity with respect to those sports for which only one team exists in a school and that team's membership is limited exclusively to boys. Presently a girl who wants to

4

compete interscholastically in that sport is given
absolutely no opportunity to do so under the challenged
By-Law. Although she might be sufficiently skilled to
earn a position on the team, she is presently denied that
position solely because of her sex. Moreover, even
where separate teams are offered for boys and girls in the
same sport, the most talented girls still may be denied the
right to play at that level of competition which their
ability might otherwise permit them. For a girl in that
position, who has been relegated to the "girls' team",
solely because of her sex, "equality under the law" has
been denied.

The notion that girls as a whole are weaker and
thus more injury-prone, if they compete with boys,
especially in contact sports, cannot justify the By-Law in
light of the ERA. Nor can we consider the argument that
boys are generally more skilled. The existence of certain
characteristics to a greater degree in one sex does not
justify classification by sex rather than by the particular
characteristic. If any individual girl is too weak,
injury-prone, or unskilled, she may, of course, be
excluded from competition on that basis but she cannot
be excluded solely because of her sex without regard to
her relevant qualifications.

*PIAA I*, 334 A.2d at 842-43 (citation omitted) (emphasis in original). The Court's

Order in *PIAA I*, therefore, must be viewed in context. Despite what appears to be

broad injunctive language, the Court's order in *PIAA I* was directed toward

remedying the wrong at the time—that being a categorical bar of girls participating

on interscholastic athletic teams designated as being only for boys. Thus, we

cannot conclude that the Court's order in *PIAA I* enjoined PIAA from enacting a

bylaw prohibiting boys from playing on girls' teams.

In the Court's view, the issue presented in the parties' papers raises

the important questions for PIAA, its member schools, and student athletes and

their families, including, but not limited to, the following: (1) does prohibiting

boys from playing on girls' teams violate the equal protection rights of boys;

5

(2) does allowing boys to play on girls' teams violate the equal protection rights of girls; and (3) does the Pennsylvania Equal Rights Amendment leave any room in Pennsylvania interscholastic athletics for gender-segregated sports. None of these questions were before the Court when it decided *PIAA I*. It would, therefore, be a mistake for any person, or any body, to interpret *PIAA I* as the definitive word on such questions.

PIAA seeks an order modifying the Court's Order in *PIAA I* to allow it to enact a bylaw that would categorically bar boys from participating on teams designated only for girls. This request will be denied because, as stated above, the Court's order in *PIAA I* does not enjoin PIAA from enacting such a bylaw provision. This does not mean, however, that PIAA, if it chooses to move forward with a bylaw amendment prohibiting or limiting boys' participation on teams designated solely for girls, should ignore the Court's legal analysis in *PIAA I* or the decades of precedent since on the question of equal rights generally and, more specifically, equal rights in interscholastic athletics. *See, e.g., Fischer v. Dep't of Public Welfare*, 509 Pa. 293, 502 A.2d 114 (1985) (holding that ERA does not prohibit differential treatment among sexes when treatment is reasonably based on unique physical characteristics of one sex); *Attorney General v. Mass. Interscholastic Athletic Ass'n, Inc.*, 378 Mass. 342, 393 N.E.2d 284 (1979) (holding unconstitutional under state equal rights amendment association's rule that categorically barred boys from playing on teams designated as being only for girls); *Williams v. Sch. Dist. of Bethlehem, PA*, 998 F.2d 168 (3d Cir. 1993) (reversing entry of summary judgment on ERA claim based on genuine issues of material fact on question of whether there were "real physical differences" between boys and girls to justify school district's decision to prohibit boys from playing on

6

girls' field hockey team). To the contrary, it would be wise for PIAA to consider all available precedent, and all available options, in crafting any policy that would limit, let alone categorically bar, a particular gender from participating on an interscholastic athletic team. If the past, as William Shakespeare noted in *The Tempest*, is truly prologue, then any such policy may be challenged in a court of law on equal protection grounds.

In light of our interpretation of *PIAA I*, the Court will not, in the context of this case, rule on the question of whether a non-existent PIAA bylaw that would categorically bar boys from participating on teams designated solely for girls would violate the ERA. It is well settled that the courts "do not render decisions in the abstract or offer purely advisory opinions." *Pittsburgh Palisades Park, LLC v. Commonwealth*, 585 Pa. 196, 203, 888 A.2d 655, 659 (2005). In deciding what action it can or should take to address the alleged problems with boys participating on athletic teams designated as being only for girls, however, PIAA should not read the Court's order in *PIAA I* as prohibiting it from doing anything other than limiting the opportunities for girls to practice and compete with boys on teams designated only for boys. If PIAA, as the primary policymaking body for interscholastic competition in the Commonwealth, believes it is appropriate to take action in this area, then it should take the first step into the breach and create a policy. Only then, if that policy is challenged in a court of law, may its constitutionality be evaluated and decided on a full record before this or some other appropriate tribunal.

P. KEVIN BROBSON, Judge

7

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, by       :
Israel Packel, Attorney General,       :
                  Plaintiff       :
                            :
          v.       :       No. 1526 C.D. 1973
                            :
Pennsylvania Interscholastic Athletic  :
Association, An Unincorporated         :
Association,                           :
                  Defendant       :

## O R D E R

AND NOW, this 27th day of August, 2013, the Motion of Defendant Pennsylvania Interscholastic Athletic Association, Inc., to Modify Relief Granted to Plaintiff is DENIED.

P. KEVIN BROBSON, Judge

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day caused the foregoing document to be served on the following through the ECF system:

Solomon Radner, Esq.
The Law Office of Keith Altman
solomonradner@kaltmanlaw.com

Devon M. Jacob, Esq.
Jacob Litigation, Inc.
djacob@jacoblitigation.com

*Counsel for Plaintiff*

Michele Mintz, Esq.
Alexis J. Spurlock, Esq.
Fox Rothschild LLP
mmintz@foxrothschild.com
aspurlock@foxrothschild.com

*Counsel for Defendant Colonial School District*

Michael I. Levin, Esq.
James J. Musial, Esq.
Levin Legal Group
mlevin@levinlegalgroup.com
jmusial@levinlawgroup.com

*Counsel for Defendant Quakertown Community School District*

McNEES WALLACE & NURICK LLC

By: _____
Dana W. Chilson
PA I.D. No. 208718

Dated:  April 11, 2025                    *Counsel for Defendant Pennsylvania Interscholastic Athletic Association*