IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOLLY MAGALENGO, on behalf of her daughter, A.M., a minor, | : <br> : <br> : |
| Plaintiff, | :    No. 2:25-cv-00325-WB <br> : |
| v. | : <br> : |
| UNITED STATES DEPARTMENT OF EDUCATION, PENNSYLVANIA INTERSCHOLASTIC ATHLETIC ASSOCIATION, INC., QUAKERTOWN COMMUNITY SCHOOL DISTRICT, and COLONIAL SCHOOL DISTRICT, | : <br> : <br> : <br> : <br> : <br> : |
| Defendants. | : |

**DEFENDANT QUAKERTOWN COMMUNITY SCHOOL DISTRICT'S
BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant, Quakertown Community School District ("School District"), submits this Brief in Support of its Motion to Dismiss the Complaint [ECF No. 1], pursuant to FED.R.CIV.P. 12(b)(6) and 12(b)(7).

**I.    FACTUAL BACKGROUND**

Plaintiff Holly Magalengo ("Magalengo") filed this action on January 20, 2025, on behalf of her minor daughter, A.M., ("Minor Plaintiff") (Magalengo and the Minor Plaintiff will be referred to together as "the Plaintiffs") a student at Quakertown Community High School ("QCHS"), seeking injunctive relief, damages for financial loss and physical and mental injuries, and attorney's fees against the Quakertown Community School District ("Quakertown") and other defendants. Magalengo alleges that Quakertown violated her daughter's rights under the Equal Protection Clause of the Fourteenth Amendment or in the alternative, is liable for "Fourteenth

Amendment Retaliation." The gist of Plaintiffs' Complaint is that Quakertown violated their rights when Quakertown, the Colonial School District ("Colonial") and the Pennsylvania Interscholastic Athletic Association ("PIAA") allowed a transgender girl in Colonial, identified as L.A., to compete in races against the Minor Plaintiff. [ECF No. 1, ¶'s 14-17, 28-29, 38-39, 16-20, 40-41]

## II.  STANDARD OF REVIEW

### A. FED.R.CIV.P. 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for failure to state a claim upon which relief can be granted. When it appears from the face of a pleading that the plaintiff can prove no set of facts that would entitle herm to relief, the Court must dismiss plaintiff's claims. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *McGovern, v. City of Philadelphia*, 554 F.3d 114, 115 (3rd Cir. 2009) (citing cases). Rule 12(b)(6) requires the Court to "accept as true all well-pleaded allegations of fact in the plaintiff's complaint and must view any reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff." *Craig v. Thomas Jefferson Univ.*, 2009 WL 2038147, *2 (E.D. Pa. 2009) (citing cases). However, the "factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level" and the plaintiff must do more than provide a "formulaic recitation of the elements of a cause of action…." *Twombly v. Bell Atlantic Corp.,* 550 U.S. 544, 555 (2007).

In *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1950 (2009), the Supreme Court reiterated that "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Under *Iqbal*, a court must apply a two-step analysis when evaluating a Rule 12(b)(6) motion. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009). The first step is to separate the factual and legal elements of the claim. *Id.* The Court "must accept all of the complaint's well-pleaded facts as true, [but it] may disregard any legal conclusions." *Id.* at 210-211. Next, the Court must evaluate

". . . whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement *with its facts*." *Id.* at 211 (citing *Iqbal* at 1950; *Phillips v. County of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2009)).

In light of the foregoing standard of review, and for the following reasons, Plaintiff's Complaint must be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

## B. FED.R.CIV.P. 12(b)(7).

Federal Rule of Civil Procedure 12(b)(7) provides for the dismissal of a complaint for failure to join a necessary party under Federal Rule of Civil Procedure 19 ("Required Joinder of Parties"). Fed.R.Civ.P. 19 provides, in relevant part:

> **(a) Persons Required to Be Joined if Feasible.**
> **(1)** *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
> **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
> **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
> \* \* \*
> **(b) When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
> **(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> **(2)** the extent to which any prejudice could be lessened or avoided by:

>    **(A)** protective provisions in the judgment;
>    **(B)** shaping the relief; or
>    **(C)** other measures;
>
>    **(3)** whether a judgment rendered in the person's absence would be adequate; and
>
>    **(4)** whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed.R.Civ.P. 19(a)-(b). See, e.g., *Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, 80 F.4th 223 (3d Cir. 2023), in which the Court succinctly explained the application of the Rule as follows:

> [T]he best reading of Rule 19 settles into three steps: 1) Considering the qualifications under Rule 19(a)(1)(A) and (a)(1)(B), should the absent party be joined?; 2) If so, is joinder feasible—that is, can the party be joined without depriving the court of the ability to hear the case?; 3) If joining the party is not feasible, should the action continue in the party's absence or be dismissed? *See Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007); *Provident Tradesmens*, 390 U.S. at 108-09.

*Id*., at 232. As another Court more fully explained:

> "Required parties" under Rule 19(a) are those who are "subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction." Fed. R. Civ. P. 19(a)(1). In considering this clause, the court first determines whether "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). At this step, the court limits its inquiry to whether it can "grant complete relief to persons *already named* as parties to the action; what effect a decision may have on absent parties is immaterial." *General Refractories*, 500 F.3d at 313 (emphasis in original); *Huber v. Taylor*, 532 F.3d 237, 248 (3d Cir. 2008). Alternatively, the court should consider whether the absent party "claims an interest relating to the subject of the action and is so situated that disposing of the action in that person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest," Fed. R. Civ. P. 19(a)(1)(B). **If an absent party is deemed to be necessary under either of these two alternatives, it must be joined if feasible, i.e., it is subject to service of process and its joinder does not deprive the court of jurisdiction.** *General Refractories*, 500 F.3d at 313; *see also Janney Montgomery Scott, Inc. v. Shepard Niles, Inc*., 11 F.3d 399, 405 (3d Cir. 1993).

*Pittsburgh Logistics Sys., Inc. v. C.R. Eng., Inc.*, 669 F.Supp.2d 613, 617 (W.D.Pa. 2009) (emphasis added).

It must be further observed that, "In reviewing a Rule 12(b)(7) motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the non-moving party." *Id.*, at 618 (citing Third Circuit cases). "The assumption of truth does not apply, however, to legal conclusions couched as factual allegations or to [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. (quoting *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1950 (2009)). Finally, "*A court making a Rule 19 determination may consider evidence outside the pleadings*." *Id.* (emphasis added).

The application of Fed.R.Civ.P. 12(b)(7) and Fed.R.Civ.P. 19 to the present facts, as stated below, establishes that Plaintiff's Complaint should be dismissed for its failure to join a necessary party.

### III.   ARGUMENT

#### A. The Equal Protection Clause Does Not Serve to Exclude Children From Participation In Publicly Funded Sporting Events.

This is not a sex discrimination case. This is not a case under any of the anti-discrimination laws—state or federal. This is not a Title IX case. On the contrary, it is a Section 1983 claim solely under the Equal Protection Clause of the 14th Amendment. The Plaintiffs have the audacity of attempting to use a constitutional provision designed to protect individual rights to deny such rights to transgender children.

The Equal Protection Clause, found in Section 1 of the Fourteenth Amendment to the United States Constitution, provides that ""No State shall ... deny to any person within its jurisdiction the equal protection of the laws." This clause, ratified in 1868, is part of the

Reconstruction Amendments, adopted in the aftermath of the Civil War to secure civil and political rights for formerly enslaved persons and to limit the powers of the states in matters of fundamental rights. The Equal Protection Clause was designed to constitutionalize the principles behind the Civil Rights Act of 1866, which declared that all persons born in the United States were citizens and were to enjoy the same rights as white citizens. There is nothing in the history of the Equal Protection clause that it could be used to say to a transgender girl, "you are not welcome to run in this race" because the Minor Plaintiff objects.

The history behind the Equal Protection clause is important because the Supreme Court has repeatedly echoed that the constitutional provisions must be read in their historical context. *E.g. Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 239, 142 S. Ct. 2228, 2247 (2022) (declining to find that abortion was encompassed without the word "liberty" because it was not deeply rooted in Nation's history); *Washington v. Glucksberg*, 521 U.S. 702, 117 S. Ct. 2258, 117 S. Ct. 2302 (1997) (declining to find a right to assisted suicide embraced in the Due Process clause after concluded that it was not deeply rooted in nation's history).

In this case, the Minor Plaintiff is claiming the constitutional right under the Equal Protection clause to say who she competes against! The Equal Protection clause was not meant or intended to apply to after school sporting events and rules that allow both cisgender and transgender students to enjoy the experience.

The Plaintiffs are essentially arguing, without any precedent to base their claims, that the Minor Plaintiff is entitled to be provided with a "girls" team that only cisgender girls can be on and from which transgender girls must be excluded. There is nothing in history supporting such an interpretation of the Equal Protection clause. For this reason alone, the Plaintiffs' claims must be dismissed.

**B. Plaintiff's Claims Set Forth Under 42 U.S.C. § 1983 Must Be Dismissed As to Quakertown Pursuant to Fed. R. Civ. P. 12(b)(6) For Failure to State a Claim For Relief Because Plaintiffs Have Not Identified Any Official Policy or Custom of Quakertown to Support a Claim Against Quakertown.**

The Plaintiffs allege that Quakertown violated the Equal Protection rights of the Minor Plaintiff because a transgender girl raced in two races against her. Conspicuously absent from the Complaint is any allegation that Quakertown had any role in determining whether the transgender girl could race. Absent from the Complaint are any allegations of any involvement or action by Quakertown, other than its team showing up to a race and its students racing. Absent from the Complaint is any allegation that Quakertown had any ability to do anything about whether the transgender athlete ran in the races.[1] We have been unable to find a single case that stands for the

---

[1] The Plaintiffs allege that the School District's Athletic Director responded to A.M.'s parents when they contacted him the day after the cross-country race: "The PIAA Bylaws in Article XVI Section 4E states [sic]: 'Where a student's gender is questioned or uncertain, the decision of the Principal as to the student's gender will be accepted by the PIAA.' The decision for which team their student athlete competes under, is the decision of the Plymouth Whitemarsh SD Administration which we do not control." [ECF No.1, ¶'s 23-24] Plaintiff's Complaint then alleges that, "Dr. Jason Bacani, the principal of Plymouth Whitemarsh High School, decided that the biological male was a biological female and allowed to compete with the females." [Id., ¶ 25] Next, Plaintiff alleges that, "The Pennsylvania Interscholastic Athletic Association, Inc. ("PIAA"), is one of the governing bodies of high school and middle school athletics for the Commonwealth of Pennsylvania, in the United States." [Id., ¶ 26] In fact, at the time of both the September 11, 2024 cross country race and the December 13, 2024 4X400 relay race, the PIAA Bylaws allegedly referenced by the School District's Athletic Director to A.M.'s parents provided as follows: "Where a student's gender is questioned or uncertain, the decision of the Principal as to the student's gender will be accepted by PIAA (See PIAA 2024-2025 Constitution and Bylaws, at Article XVI Section 4E, page 38, a true and correct copy of which is attached hereto as **Exhibit "A."**) Accordingly, given PWMHS Principal Dr. Jason Bacani's adherence and exercise of his authority pursuant to the governing PIAA Bylaws regarding high school student L.A., it is clear that Quakertown had no such authority to exercise, either to prevent or to allow L.A. to compete in the subject cross country race. Given the absence of any allegations in the Complaint to the contrary, Plaintiff's Complaint against Quakertown should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

proposition that a school district is liable under Section 1983 because of what others have decided regarding participants in a race. Consequently, the Plaintiffs' Section 1983 claims against Quakertown should be dismissed.

As a matter of long-settled law, it is required for a Section 1983 plaintiff to identify a specific policy, practice or custom of a School District that allegedly resulted in the claimed violation of her civil right(s) guaranteed by Section 1983. *See. e.g.*, *Marran v. Marran*, 376 F.3d 143, 156 (3d Cir. 2004):

> Assuming, *arguendo*, that Librett properly alleged a constitutional violation, Librett did not allege that a policy or custom of the [Montgomery County Office of Children and Youth] led to the violation. This is an essential part of a § 1983 claim against a county. Without an allegation of a policy or custom, Librett has not stated a *prima facie* case, and the District Court properly dismissed the claim without permitting discovery.

*See also*, *Monell v. Dep't of Soc. Servs.*, 98 S. Ct. 2018, 2037-2038 (2018) ("[It] is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."); *Carswell v. Borough of Homestead*, 381 F.3d 235, 244-245 (3d Cir. 2004) ("There must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."'") (citing *Brown v. Muhlenberg Township*, 269 F.3d 205, 214 (3d Cir. 2001) (quoting *City of Canton*, 489 U.S. at 385); and *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 761 (3d Cir. 2019):

> The District next argues that even if Baloga can establish a constitutional violation, the District itself could not be held liable because there is no evidence that any municipal policy or custom caused that violation. *See Monell*, 436 U.S. at 690-91. A municipality may be held liable pursuant to 42 U.S.C. § 1983 only if a plaintiff is able to identify such a policy or custom. *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 580 (3d Cir. 2004). That requires a plaintiff to show, for a policy, **that an official with final decision-making authority has "issue[d] an official proclamation, policy, or**

>**edict,"** *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990), or, for a custom, that a course of conduct, though not authorized by law, was "'so permanent and well settled' as to virtually constitute law," *id.* (quoting *Monell*, 436 U.S. at 690). **In either case, the policymaker, as defined under state law, must be "responsible either for the policy or, through acquiescence, for the custom."** *Andrews*, 895 F.2d at 1480-81. (emphases added)

Additionally, as held by the Third Circuit Court in *Marran*, *supra*, omission of the necessary factual allegations to support a plaintiff's Section 1983 claim is not excused simply because discovery has not been completed. *See also*, *McGovern v. City of Philadelphia*, 554 F.3d 114, 121 n.5 (3d Cir. 2009):

> McGovern's assertion that he should be entitled to discovery in order to marshal facts to support his theory that the City discriminated against him pursuant to an official policy or custom is misguided. Our review of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is limited to the contents of the complaint. *Yarris v. County of Delaware*, 465 F.3d 129, 134 (3d Cir. 2006). Nowhere in his complaint does McGovern allege that the City maintained a policy or custom to retaliate against or otherwise mistreat Caucasian employees. Absent such an allegation, McGovern has not stated a *prima facie* case, and the District Court properly dismissed the claim without permitting discovery.

It is clear, therefore, that the foregoing precedential case law must be applied in reviewing the sufficiency of Plaintiff's legal claims asserted under Section 1983, that being her claims of alleged violations of the Fourteenth Amendment's Equal Protection Clause and "Fourteenth Amendment Retaliation."[2] Because Plaintiff's Complaint makes no factual allegation of any policy

---

[2] With respect to Plaintiff's claim of "Fourteenth Amendment Retaliation," the School District joins in and incorporates by reference -- as similarly applies to the factual allegations and lack of supporting factual allegations in the Complaint, as against Quakertown -- Co-defendant Colonial School District's Fed.R.Civ.P. 12(b)(6) Motion to Dismiss this claim as argued in Section IV (B)(2), at pp. 8-9, of its "Memorandum of Law in Support of Defendant Colonial School District's Motion to Dismiss Plaintiff's Complaint." [ECF No. 26-1], as well as Co-Defendant PIAA's similar Motion to Dismiss this claim, as argued in Section III(D), at pp. 9-10, of its "Brief of

or custom of the School District that deprived her of rights to which she claims entitlement, these claims should be dismissed for failure to state a claim for relief, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## C. Plaintiff's Complaint Must Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(7) and Fed. R. Civ. P. 19(a)(1) For Failure to Join a Necessary Party and Under Important Abstention Considerations.

Plaintiffs bring this Equal Protection claim under 42 U.S.C. § 1983, not to apply existing law, but to create new law! The Plaintiffs unabashedly assert in the Joint Report Of Rule 26(F) Meeting And Proposed Discovery Plan that "Plaintiff's position is that the Plaintiff is trying to create new law." [ECF 27, p. 10] The "new law" that they seek to establish is that school districts across the Commonwealth of Pennsylvania (and presumably the country) must exclude transgender girls from participating on sports teams and in sporting events under the auspices of public school districts, the PIAA, and regarding anti-discrimination requirements, the Pennsylvania Human Relations Commission ("the PHRC"). By doing so, Plaintiffs implicitly seek to challenge the meaning and interpretation to be given to relevant state regulations by the PHRC that protect transgender athletes' participation in gender-aligned sports teams. 16 Pa.Code § 41.206. As a result, Quakertown requests that the Court abstain or, alternatively, find that the PHRC is a necessary party that must be joined by the Plaintiffs.

---

Defendant Pennsylvania Interscholastic Athletic Association, Inc. in Support of its Motion to Dismiss Complaint." [ECF No. 30-2]

### (1) The Court Should Abstain Under *Railroad Commission v. Pullman, Co.*, 312 U.S. 496 (1941).

Federal courts should abstain from deciding constitutional claims when a potentially dispositive issue of state law could render a constitutional ruling unnecessary. *Pullman* abstention applies when the case presents a sensitive area of social policy best left to the states; state law is unclear or unsettled; and a state court ruling on the state-law issue might obviate the need to decide the constitutional question.

### (a) Sensitive area of state policy: Transgender participation in school athletics

Issues involving gender identity, student participation in extracurricular activities, and school sports governance involve highly sensitive local concerns that implicate educational policy, equality, and parental rights—traditionally regulated by state law. *See Epperson v. Arkansas*, 393 U.S. 97, 104 (1968) ("control of public school curriculum is committed to the state and local authorities"). The Supreme Court has repeatedly deferred to state and local authorities in the governance of the public school system. In one case, the Court said:

> "No single tradition in public education is more deeply rooted than local control over the operation of schools; local autonomy has long been thought essential both to the maintenance of community concern and support for public schools and to quality of the educational process. . . . [Local] control over the educational process affords citizens an opportunity to participate in decision-making, permits the structuring of school programs to fit local needs, and encourages 'experimentation, innovation, and a healthy competition for educational excellence.'" *Id.*, at 741-742 (quoting *San Antonio Independent School District* v. *Rodriquez*, 411 U.S. 1, 50 (1973)).
>
> The provision of primary and secondary education, of course, is one of the most important functions of local government. Absent residence requirements, there can be little doubt that the proper planning and operation of the schools would suffer significantly. The State thus has a substantial interest in imposing bona fide residence requirements to maintain the quality of local public schools.

11

*Martinez v. Bynum*, 461 U.S. 321, 329-330, 103 S. Ct. 1838, 1843 (1983).

Although *Martinez* dealt with a residency requirement, the rules governing participation in interscholastic rules require "proper planning and operation" taking into account relevant factors. That should be left to the PIAA, the school districts that participate with the PIAA and the PHRC.

### (b) Unsettled issues of state law exist

State regulations protecting transgender students' rights in athletics, i.e., 16 Pa. Code § 41.206, have not been definitively interpreted by state courts. If a state court were to find that these regulations preclude exclusion of transgender girls from girls' sports, such a ruling could resolve or significantly alter the Equal Protection analysis.

### (c) State law might render constitutional ruling unnecessary

If state courts uphold the regulation under state law or find the exclusion contrary to state anti-discrimination statutes, Plaintiff's claim could become moot or substantially narrowed. *See Harris Cnty. Comm'rs Court v. Moore*, 420 U.S. 77, 83 (1975) (Pullman abstention appropriate when state court decision could eliminate federal constitutional question).

### (2) Federalism and Comity Support Abstention

This case does not merely seek relief for an individual plaintiff. Rather, it asks this Court to create new federal constitutional doctrine that would undermine or invalidate a state-level regulatory framework enacted to protect a vulnerable class of students. Federal courts must proceed with caution where intervention would disrupt state authority over education and civil rights policy. *See Erznoznik v. City of Jacksonville*, 422 U.S. 205, 213 (1975) (abstention appropriate where federal adjudication would disrupt state administrative functions). *See also, County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185 (1959) noting that:

> This Court has also upheld an abstention on grounds of comity with the States when the exercise of jurisdiction by the federal court would disrupt a state administrative process, *Burford* v. *Sun Oil Co.*, 319 U.S. 315; *Pennsylvania* v. *Williams*, 294 U.S. 176, … or otherwise create needless friction by unnecessarily enjoining state officials from executing domestic policies, *Alabama Public Service Comm'n* v. *Southern R. Co.*, 341 U.S. 341; *Hawks* v. *Hamill*, 288 U.S. 52.

*Id.*, at 189. Abstention is warranted in the present case because the continued exercise of federal Court jurisdiction to resolve what is, in essence, is a claim of discrimination based on sex would disrupt the State's own administrative process for resolving such claims pursuant to the policies embodied in the Pennsylvania Human Relations Act (PHRA) and the related regulations of the PHRC, as set forth more fully in Section C(3), below. As the Supreme Court further has explained in regard to the abstention doctrine:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "**difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar**"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be **disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern**." *Colorado River Water Conservation Dist.* v. *United States, supra*, at 814.

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) (discussing the "Burford Doctrine") (emphases added). These factors also strongly militate in favor of this Court's dismissal of Plaintiff's Complaint, and in favor of the administrative process provided by the PHRA and PHRC regulations. As the Third Circuit has recognized:

> Burford abstention is appropriate where a difficult question of state law is presented which involves important state policies or administrative concerns. In this situation, a federal court may abstain to avoid disrupting the efforts of a state "to establish a coherent policy with respect to a matter of substantial public concern."

13

*Heritage Farms, Inc. v. Solebury Township*, 671 F.2d 743 (3d Cir. 1982) (*Burford* citation omitted) (and quoting from *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976). The *Colorado River* Court also held that: "Abstention is appropriate 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.'" *Id*., at 814 (citing Pullman, supra, and other Supreme Court cases). Such is the case here.

For the foregoing reasons, Defendant respectfully requests that the Court dismiss or stay this action pending resolution of the relevant state law issues in state court.

### (3) The PHRC as a Necessary Party.

In the event that the Court elects not to abstain, Quakertown asserts that no decision whether the regulations run afoul of the Equal Protection Clause should be made in the absence of the Pennsylvania Human Relations Commission ("PHRC"), the body charged in the state with enforcing many important civil rights.

The PHRC is charged with administrative enforcement and compliance with the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951 *et seq*. Section 956 of the PHRA provides that, "There shall be, and there is hereby established in the Governor's Office a non-partisan, departmental administrative commission for the administration of this act, which shall be known as the 'Pennsylvania Human Relations Commission,' and which is hereinafter referred to as the 'Commission.'" 43 P.S. § 956(a). The "Powers and duties of the Commission" include, among other things, "To initiate, receive, investigate and pass upon complaints charging unlawful discriminatory practices." *Id*., at § 957(f). In this regard, the PHRC's regulations identify "sex discrimination" as follows:

> 16 Pa.Code **§ 41.206. Sex discrimination.**

14

> The term ''sex'' as used in the PHRA … includes all of the following:
>
> (1) Pregnancy.
> (2) Sex assigned at birth.
> (3) *Gender, including a person's gender identity or gender expression*.
> (4) Affectional or sexual orientation, including heterosexuality, homosexuality, bisexuality and asexuality.
> (5) Differences of sex development, variations of sex characteristics or other intersex characteristics.

16 Pa.Code Chapter 41, "Subchapter D. Protected Classes," at § 41.206 (emphasis added). The PHRC Regulations also define "Gender identity or expression:"

> *Gender identity* or *expression*—Having or being perceived as having a gender-related identity, appearance, expression or behavior, which may or may not be stereotypically associated with the person's sex assigned at birth. Gender identity or expression may be demonstrated by consistent and uniform assertion of the gender identity or any other evidence that the gender identity is part of a person's core identity.

*Id*., at § 41.204. The purpose of Subchapter D is set forth at § 41.201:

> This subchapter ensures that all unlawful discriminatory practices proscribed by the PHRA … are interpreted and applied consistently. This subpart also ensures that all complaints filed with the PHRC are investigated consistent with the rules outlined in this subchapter.

The PHRC Regulations also set forth an "Enforcement" provision, at § 41.203: "This subchapter shall be subject to and enforced in accordance with the PHRA, … Chapter 42 (relating to Special Rules of Administrative Practice and Procedure) and 1 Pa. Code Part II (relating to General Rules of Administrative Practice and Procedure). In addition to the PHRC Regulations, the PHRA provides that, "If the Commission concludes, at any time following the filing of a complaint under this act, that prompt judicial action is necessary to prevent immediate and irreparable harm, the Commission may commence an action in Commonwealth Court or the appropriate court of common pleas, and that court may grant an appropriate preliminary or special

15

injunction pending final disposition of the complaint." 43 P.S. § 959.2. The PHRA also provides, as relates to School Districts and other political subdivisions, that:

> It shall be an unlawful discriminatory practice …
>
>> For **any person**, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act [or] For **any person**, employer, employment agency, labor organization or employe, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

43 P.S. § 955(d)-(e) (emphases added). The Act defines "Person" as including "one or more individuals … and all political subdivisions [e.g., school districts]…." *Id.*, at § 954. Section 959 of the Act ("Procedure") provides, in pertinent part, that:

> **(a)** Any person claiming to be aggrieved by an alleged unlawful discriminatory practice may make, sign and file with the Commission a verified complaint, in writing, which shall state the name and address of **the person**, employer, labor organization or employment agency alleged to have committed the unlawful discriminatory practice complained of ….
> **(b)**
> **(1)** After the filing of any complaint, or whenever there is reason to believe that an unlawful discriminatory practice has been committed, the Commission shall make a prompt investigation in connection therewith.
> **(2)** The Commission shall send a copy of the complaint to the named respondent within thirty days from the date of docketing the complaint ….
> **(3)** A respondent shall file a written, verified answer to the complaint within thirty days of service of the complaint ….
> \* \* \*
> **(c)** If it shall be determined after such investigation that no probable cause exists for crediting the allegations of the complaint, the Commission shall, within ten days from such determination, cause to be issued and served upon the complainant written notice of such determination, and the said

> complainant or his attorney may, within ten days after such service, file with the Commission a written request for a preliminary hearing before the Commission to determine probable cause for crediting the allegations of the complaint. ….
>
>                                       \*     \*     \*
>
> **(d)** In case of failure so to eliminate such practice or in advance thereof, if in the judgment of the Commission circumstances so warrant, the Commission shall cause to be issued and served a written notice, together with a copy of such complaint as the same may have been amended, requiring the person … named in such complaint, hereinafter referred to as respondent, to answer the charges of such complaint at a hearing before the Commission at a time and place to be specified in such notice.

43 P.S. § 959(a)-(b)-(d) (emphasis added).  Following the issuance of an enforcement order by the PHRC:

> The complainant, the Attorney General or the Commission may secure enforcement of the order of the Commission or other appropriate relief. When the Commission has heard and decided any complaint brought before it, enforcement of its order shall be initiated by the filing of a petition in court ….

43 P.S. § 960 ("Enforcement and judicial review"). Even if the PHRC should determine in a case that no probable cause exists for its own enforcement of the PHRA, the complainant may then file a complaint in the court of common pleas alleging the accused party's violation of the PHRA. In fact, before filing a state court complaint alleging a violation of the PHRA, the complaint is required to first have exhausted her administrative remedy by filing her claim with the PHRC. See e.g., *Nicole B. School Dist. of Phila.,* 237 A.3d 986, 989 (Pa. 2020) ("[W]hile an alleged victim of discrimination may bring an action in the court of common pleas for redress, he or she must first exhaust administrative remedies under the PHRA. *Id.* § 962(c)(1).") Accordingly, Section 962(c) provides:

> In cases involving a claim of discrimination, if a complainant invokes the procedures set forth in this act, that individual's right of action in the courts of the Commonwealth shall not be foreclosed. If within one (1) year after the filing of a complaint with the Commission, the Commission dismisses

17

>the complaint or has not entered into a conciliation agreement to which the complainant is a party, the Commission must so notify the complainant. On receipt of such a notice the complainant shall be able to bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination granted by this act. [43 P.S. § 962(cc)(1)]
>
>\* \* \*
>
>If, after a trial held pursuant to subsection (c), the court of common pleas finds that a defendant engaged in or is engaging in any unlawful discriminatory practice as defined in this act, the court may award attorney fees and costs to the prevailing plaintiff. [*Id.*, at 962(C.3)]

The foregoing provisions make clear that the Pennsylvania Human Relations Commission is a necessary party in this action and should have been joined by Plaintiff, pursuant to Fed.R.Civ.P. 19(a)(1) (recited above in **Section B**.)

As a threshold matter, the PHRC is subject to service of process and its joinder would not deprive the court of subject-matter jurisdiction. Next, the PHRC has an interest relating to the subject of the action and is so situated that disposing of the action in its absence may as a practical matter impair or impede its ability to protect that interest. Fed.R.Civ.P. 19(a)(1)(B)(i). The PHRC's interest in this matter is clear. As an administrative agency charged by state law with enforcing the PHRA, including its prohibitions against sex discrimination as defined by the Act to include "Gender, including a person's gender identity or gender expression," and further defined in the statute as "Having or being perceived as having a gender-related identity, appearance, expression or behavior, which may or may not be stereotypically associated with the person's sex assigned at birth. Gender identity or expression may be demonstrated by consistent and uniform assertion of the gender identity or any other evidence that the gender identity is part of a person's core identity." What Plaintiff's Complaint seeks to achieve, on the opposite hand, is in effect a ruling that the definition of sex includes only "biological males" and "biological females." A federal ruling in the present Court, or on appeal should that occur, would create nationwide federal law at complete

loggerheads with the statutory charge of the PHRC and the PHRA which it is charged with enforcing. Fed.R.Civ.P. 19(a)(1)(B)(i). Without the PHRC's joinder, the Commission would have no ability to protect its statutory mission of investigating claims of sex discrimination based on gender identity and gender expression and enforcing the PHRA laws against such discrimination based on sex. See, e.g., *Tillman v. Milwaukee*, 725 F.2d 354 (7th Cir. 1983), where the plaintiff brought suit against the City of Milwaukee seeking injunctive relief and reinstatement to employment and retroactive seniority. The Circuit court held that the Wisconsin Department of Industry, Labor, and Human Relations ("DILHR") was a necessary party pursuant to Fed.R.Civ.P. 19(a), "whose joinder was necessary for the complete adjudication of Tillman's complaint." *Id*., at 355. The Court explained that: "As the essential relief sought by Tillman was 'reinstatement to an apprenticeship program' … 'with retroactive seniority," it is more than obvious that the agency (DILHR) created by statute to supervise, direct and regulate apprenticeship programs and indentures was a necessary party to the determination of what, if any, relief could be afforded the plaintiff-appellant Tillman." *Id*., at 358. In this case, it is the PHRC which was created by statute (43 P.S. § 956) "To initiate, receive, investigate and pass upon complaints charging unlawful discriminatory practices[,]" (*Id*., at 957(f)) including "sex discrimination" as defined in the PHRC's regulations to include "G*ender, including a person's gender identity or gender expression*." 16 Pa.Code § 41.206(3).

As an additional consequence of Plaintiff's failure to join the PHRC as a party defendant, a ruling in Plaintiff's favor due to the PHRC's inability to protect its interest would leave Quakertown (and Co-defendants) "subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest." Fed.R.Civ.P. 19(a)(1)(B)(ii). On the one hand, the School District could be held civilly liable under a nationwide law banning

19

transgender female athletes from competing in athletic competitions with cisgender female athletes, while on the other hand, the School District could be held civilly liable for prohibiting transgender female athletes from competing in athletic competitions with cisgender female athletes (discriminating based on sex in violation of the PHRA as enforced by the PHRC and the state courts).

**IV.   Conclusion**

Based upon the foregoing, Defendant Quakertown Community School District, respectfully requests that its Motion for Dismissal of Plaintiff's Complaint pursuant to Fed.R.Civ.P. No. 12(b)(6) and 12(b)(7) be granted and that an Order be entered dismissing Plaintiff's Complaint against Quakertown Community School District with prejudice.

Respectfully submitted,

LEVIN LEGAL GROUP, P.C.

/s/ *James J. Musial*

Date:   April 15, 2025

_____
Michael I. Levin, Esquire
James J. Musial, Esquire
1800 Byberry Road, Suite 1301
Huntingdon Valley, PA 19006
Phone: 215.938.6378
mlevin@levinlegalgroup.com
jmusial@levinlegalgroup.com
Attorneys for Defendant,
*Quakertown Community School District*