# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AISLIN MAGALENGO, | |
| *Plaintiff,* | CASE NO. 2:25-cv-00325 |
| v. | Hon. Wendy Beetlestone |
| PENNSYLVANIA INTERSCHOLASTIC ATHLETIC ASSOCIATION, INC., QUAKERTOWN COMMUNITY SCHOOL DISTRICT, and COLONIAL SCHOOL DISTRICT, | |
| *Defendants.* | |

**PLAINTIFF'S RESPONSE TO DEFENDANT QUAKERTOWN COMMUNITY SCHOOL DISTRICT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

STANDARD OF REVIEW ...................................................................................................1

ARGUMENT .......................................................................................................................2

    A.   Separate and Distinct ................................................................................................2

    B.   Plaintiff Has Properly Alleged Facts That Support a Title IX Claim .......................2

    C.   Plaintiff Alleged Sufficient Facts to Support the Claim That Quakertown Community School District Enforced a Policy That Violated the Equal Protection Clause .........................................................................................................................6

    E.   QCSD was Acting Under Color of State Law Pursuant to §1983 ............................8

    F.   The Court Should Not Abstain from Exercising Jurisdiction .................................10

    G.   PHRC is Not a Necessary Party ..............................................................................11

CONCLUSION ..................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................... 1, 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) ................................................. 1

*Brooks v. State Coll. Area Sch. Dist.*, 707 F. Supp. 3d 448, 464 (M.D. Pa. 2023) ............. 3

*Brooks v. State Coll. Area Sch. Dist.*, 707 F. Supp. 3d 448, 466 (M.D. Pa. 2023) ............. 9

*Califano v. Webster*, 430 U. S. 313, 320 (1977) ................................................................. 7

*Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) ............................. 1

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) ............................... 1

*Craig v. Boren*, 429 U.S. 190, 197 (1976) ..................................................................... 6, 7

*Doe v. Boyertown Area School District*, 897 F.3d 518 (3d Cir. 2018) ...................... 4, 7, 8

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359 (1989) ...... 10

*Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002) ................................... 7

*Pokrandt v. Shields*, 773 F. Supp. 758, 765 (E.D. Pa. 1991) ............................................. 9

*Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110 (1968) .......... 12

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) ................................................... 11

*Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010) ............................ 2

*Soule v. Conn. Ass'n of Sch.*, 755 F. Supp. 3d 172, 193 (D. Conn. 2024) ...................... 4, 6

*United States v. Virginia*, 518 U.S. 515, 533 (1996) .......................................................... 6

*Zwickler v. Koota*, 389 U.S. 241, 248 (1967) .................................................................. 11

**Statutes**

16 Pa. Code § 41.206 ..................................................................................................10

20 U.S.C. § 1686 .........................................................................................................4

34 C.F.R §106.41 ........................................................................................................5

34 C.F.R. § 106.33 ......................................................................................................3

34 C.F.R. § 106.41(c) ...........................................................................................2, 3, 4

U.S. Const. Amend. XIV, § 1 .....................................................................................6

**Rules**

Fed. R. Civ. P. 12(b)(6) ...............................................................................................1

NOW COMES Plaintiff, by and through her counsel, and submits this response to Defendant Quakertown Community School District's Motion to Dismiss. In support thereof, Plaintiff states the following:

## STANDARD OF REVIEW

"A complaint may be dismissed under Rule 12(b)(6) for 'failure to state a claim upon which relief can be granted.' But detailed pleading is not generally required. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016). Fed. R. Civ. P. 12(b)(6). The Rules demand "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.; see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). Although the plausibility standard "does not impose a probability requirement," *Twombly*, 550 U.S. at 556, it does require a pleading to show "more than a sheer possibility that a defendant

has acted unlawfully," *Iqbal*, 556 U.S. at 678. A complaint that pleads facts "merely consistent with a defendant's liability ... stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation and internal quotation marks omitted). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## ARGUMENT

### A. Separate and Distinct

Plaintiff is a biological female. L.A. is, has always been, and will always be a biological male. At all times pertinent to this litigation, CSD and QCSD operated separate and distinct teams for both male and female athletes for both the high school track and cross-country sports.

Female athletes shouldn't be pushed aside to make room for male athletes in their own category. That's not inclusion, its erasure.

### B. Plaintiff Has Properly Alleged Facts That Support a Title IX Claim

The Quakertown Community School District policy allowing biological male athletes into their facilities to compete in girls' high school sports is a violation of Title IX. Title IX and its implementing regulations make clear that when an educational institution chooses to separate athletic programs by sex, it must do so in a way that ensures *equal athletic opportunity for members of both sexes*. 34 C.F.R. § 106.41(c)

2

(emphasis added). One factor in assessing whether equal opportunity exists is whether "the selection of sports and levels of competition effectively accommodate the interests and abilities of both sexes." 34 C.F.R. § 106.41(c)(1). Additionally, when schools provide separate toilet, locker room, or shower facilities for male and female students, those facilities must be "comparable." 34 C.F.R. § 106.33. "[A] Title IX claim for sex discrimination only requires the plaintiff to plead "(1) that he or she was subjected to discrimination in an educational program, (2) that the program receives federal assistance, and (3) that the discrimination was on the basis of sex." *Brooks v. State Coll. Area Sch. Dist.*, 707 F. Supp. 3d 448, 464 (M.D. Pa. 2023).

In the context of sex-separated athletics, unlike in general educational settings, physiological distinctions between sexes form the very basis for separation. Thus, permitting individuals assigned male at birth to participate in female-designated competitions implicates not only competitive fairness but also the core function of Title IX's equal opportunity guarantee. This policy deprived Plaintiff of competitive titles, placements, and potential scholarship opportunities - concrete harms that fall squarely within the zone of interests Title IX was designed to protect.

This case is also distinguished from *Doe v. Boyertown Area School District*, 897 F.3d 518 (3d Cir. 2018), where the Third Circuit upheld a policy allowing transgender students to access restrooms and locker rooms consistent with their gender identity

3

against a Title IX claim. That case addressed issues of privacy and dignity in shared facilities, and the school had implemented clear alternative accommodations to protect all students. In this case, the claim concerns competitive athletic events, where equal opportunity, not privacy, is the core concern, and no such alternative safeguards were available to mitigate the disadvantage imposed. This renders *Doe* irrelevant as applied.

Similarly, the suggestion in *Doe* that Title IX might even extend to protect students identifying outside of their biological sex is not relevant in this case for the reasons mentioned above.

Additionally, the plain historical interpretation of 34 C.F.R § 106.41(c)(1) has not considered the distinction between gender identity and sex, and the statutory language generally prefers the term sex. "The statute … provided a grace period for educational institutions that had "begun the process of changing from being an institution which admits only students of one sex to being an institution which admits students of *both sexes*." *Soule v. Conn. Ass'n of Sch.*, 755 F. Supp. 3d 172, 193 (D. Conn. 2024) (emphasis added). Title IX expressly allows for "[s]eparate living facilities for the different sexes," 20 U.S.C. § 1686. These provisions, among others, reflect Congress's original understanding of "sex" in the statute as biological, a view long reflected in the Department of Education's own regulatory guidance, including the most recent Order 14201. Thus, reflecting a binary classification based on sex-specific physical differences,

which is particularly relevant in the context of athletics, is not a particularly novel interpretation of 34 C.F.R §106.41.

QCSD is a federally funded school district. Plaintiff Aislin Magalengo is a biological female athlete who competed in Pennsylvania high school track competitions as a student at Quakertown High School in the Quakertown Community School District. The Pennsylvania Interscholastic Athletics Association previously had a policy that allowed the principal" to make determinations regarding the competition status of persons of "questioned gender identity." Ostensibly per the passing of Executive Order 14201 **[Exhibit A]**, the PIAA changed the language from "gender identity" to "sex." However, throughout the 2024 and 2025 track seasons, including after the PIAA rule change, Plaintiff was subjected to competing against a biological male athlete, L.A., multiple times in PIAA-sponsored events. L.A., a student in Colonial School District, finished ahead in some of the races. On September 11, 2024, L.A. and Plaintiff competed in a cross-country race at Quakertown High School, a school in located in QCSD. L.A. finished in first place, and Plaintiff took second. Plaintiff was the first-place biological female athlete in the women's race. Nevertheless, Plaintiff was awarded second. Being subjected to these conditions deprived Plaintiff of the opportunity to compete under the "equal opportunity to "fair athletic competition" and equal treatment conditions guaranteed under Title IX. Because of this, Plaintiff lost out on first place recognition and records, leading to a cognizable, redressable harm directly caused as a result of QCSD

5

accommodating the CSD policy by hosting races in which L.A. participated. *See Soule* (holding that the loss of recognition and titles are redressable harms under Title IX).

For the foregoing reasons, Plaintiff has a plausible Title IX claim, and the motion to dismiss in that regard should be denied.

### C. Plaintiff Alleged Sufficient Facts to Support the Claim That Quakertown Community School District Enforced a Policy That Violated the Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from denying any person the equal protection of the laws. U.S. Const. Amend. XIV, § 1. Where a state or state actor adopts policies that treat individuals differently based on sex, such classifications are subject to **intermediate scrutiny** and must be **substantially related to an important governmental interest.** *Craig v. Boren*, 429 U.S. 190, 197 (1976); *United States v. Virginia*, 518 U.S. 515, 533 (1996). "'Inherent differences' between men and women, we have come to appreciate, remain cause for celebration, but not for denigration of the members of either sex or for artificial constraints on an individual's opportunity.'" *Id. (citing Califano* v. *Webster, 430* U. S. 313, 320 (1977)). "[T]o establish a prima facie case of discrimination under the Equal Protection Clause, appellants needed to prove that they were members of a protected class and that they received different treatment than that received by other similarly-situated individuals.

6

*Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002). Additionally, "Constitutional right[s] … cases necessarily require fact-intensive and context-specific analyses.'" *Doe* at 27.

Here, Plaintiff alleges that QCSD, through its faculty and administrators at Plymouth Whitemarsh High School permitted a biological male athlete, L.A., to compete in girls' athletic events. By allowing L.A. to compete at the hosted events, QCSD upheld a policy that allowed biological male athletes to be classified as something other than their biological sex, which hurts the class of biologically female athletes. Although this classification is relevant to both male and female athletics, this will likely only impact girls because, as demonstrated in the Complaint, the inherent biological advantages are typically only relevant as it pertains to a males in female athletics.[1]

Additionally, although *Doe* upheld a policy concerning access to shared facilities as a compelling government interest, as noted above, the context in this case is very different. Plaintiff here does not allege mere discomfort or privacy concerns, but rather **the denial of equal athletic opportunity in the context of regulated competition** a context where inherent sex-based distinctions are not only permitted but explicitly relied

---

[1] Defendants' assertion that Plaintiff has no "constitutional right" to play sports mischaracterizes the nature of Plaintiff's Equal Protection claim. The issue is not whether participation in interscholastic athletics is itself constitutionally protected, but whether the state may classify participants based on sex in a way that denies equal protection. Sex-based classifications are subject to intermediate scrutiny regardless of whether a fundamental right is implicated.

7

upon. Therefore, the PIAA policy as applied by QCSD plausibly should not pass intermediate scrutiny.

Because Plaintiff plausibly alleges that QCSD's decision to allow a biologically male athlete to participate in female-designated athletic competitions caused a **disparate, sex-based harm** without adequate justification, the motion to dismiss her Equal Protection claim should be denied on this basis.

### D. Plaintiff Alleged a Plausible Violation of her Fourteenth Amendment Right to Privacy

Under Supreme Court precedent, "a person has a constitutionally protected privacy interest in his or her partially clothed body." *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 533 (3d Cir. 2018). Constitutional right to privacy cases "necessarily require fact-intensive and context-specific analyses." Unlike *Doe v. Boyertown*, where schools provided alternative privacy accommodations, Plaintiff here alleges she was required to use shared locker rooms or bathrooms with a biologically male athlete on QCSD, without a policy that offers meaningful alternatives like the ones mandated in *Doe*. This states a plausible claim at the motion to dismiss stage and should not be dismissed.

### E. QCSD was Acting Under Color of State Law Pursuant to §1983

Section 1983 provides a procedural vehicle for private plaintiffs to enforce the Constitution when they suffer violations under color of state law. *Brooks v. State Coll.*

8

*Area Sch. Dist.*, 707 F. Supp. 3d 448, 466 (M.D. Pa. 2023). "In order to state a viable [S]ection 1983 claim, [a] plaintiff must plead two essential elements with specificity: (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that [the] defendant's conduct deprived [the] plaintiff of a right, privilege, or immunity secured by the United States Constitution or law of the United States." *Pokrandt v. Shields*, 773 F. Supp. 758, 765 (E.D. Pa. 1991). Under *Monell v. New York Department of Social Services*, a municipality is regarded as a "person" when it acts through a "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* This includes unconstitutional practices which are "so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* It also includes a "failure to train demonstrating 'deliberate indifference' 'towards the constitutional violations caused by its employees." *Id*.

Plaintiff specifically alleges that she lost races and recognition as a direct result of the well-settled decisions and practices enforced by QCSD (the municipality) and its faculty to allow a biological male athlete to race against her and use the locker rooms and bathrooms. As alleged, these policies violate the Fourteenth Amendment Equal Protection and Due Process Clauses (Right to Privacy) by allowing L.A. to displace female competitors from winning races and recognition in sex-designated events. Thus, the complaint should not be dismissed on this basis.

9

F.   **The Court Should Not Abstain from Exercising Jurisdiction**

QCSD invokes *Pullman* and *Burford* abstention doctrines, but neither applies here. Abstention is the exception, not the rule, and is disfavored where federal constitutional rights are at stake. See *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359 (1989) (NOPSI) ("[T]here is, … no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of state policy."). The resolution of the state law would not resolve the Constitutional and federal rights issues in this case. *See Id*.

While QCSD claims state regulations remain unsettled, they point to no live dispute pending before a Pennsylvania state court or agency. The cited regulation, 16 Pa. Code § 41.206, defines sex discrimination broadly but does not conflict with the federal constitutional or statutory questions at issue. Plaintiff's claims do not ask the Court to interpret the PHRA; rather, they raise claims under the U.S. Constitution and Title IX. As in *NOPSI*, the federal issues here are independent of any ambiguous state law scheme. Furthermore, a *Burford* abstention may only be applied in a suit for equitable relief. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996). In this case Plaintiff is seeking damages.

Plaintiff raises claims under the Equal Protection Clause and Title IX, both of which are within the core jurisdiction of the federal courts. See *Zwickler v. Koota*, 389

U.S. 241, 248 (1967). Whether Plaintiff has stated a claim that a school policy violates the Equal Protection Clause is a question of federal law. Federal courts are not divested of jurisdiction merely because a state has regulations that touch on related topics.

### G.   PHRC is Not a Necessary Party

QCSD argues that the Pennsylvania Human Relations Commission (PHRC) is a required party under Rule 19 because it governs. But the PHRC has no direct role in enforcing Title IX or federal constitutional rights. Its state-law enforcement role under the PHRA does not mean that federal litigation implicating overlapping facts must involve it. The PHRA also has no relation to the PIAA's policy regarding classification of athletes based on their biological sex.

The hypothetical risk that QCSD could face conflicting obligations under federal and state law is speculative and does not justify dismissal. Inconsistent obligations under federal and state law are commonplace and not a basis for abstention. See *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110 (1968). Federal law supersedes.

Plaintiff is not seeking to invalidate the PHRC's regulations or challenge its enforcement authority. Nor would any relief granted in this action bind or impair the PHRC's ability to administer the PHRA.

The abstention doctrines should not apply. Nor should the 12(b)(7) claim. The federal issues raised in this case are properly before this Court, and the PHRC is not a necessary party under Rule 19. The motion to dismiss under Rules 12(b)(7) and 19(a)(1), and under the abstention doctrines, should be denied.

## CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that this Court deny Defendant Quakertown Community School District's Motion to Dismiss. Should this Honorable Court deem the Plaintiffs claim deficient, Plaintiff requests leave file a Second Amended Complaint.

Dated: June 10, 2025.                                   Respectfully Submitted,

/s/ *Solomon Radner*
Solomon Radner, Esq. (*admitted pro hac vice*)
THE LAW OFFICE OF KEITH ALTMAN
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48334
Telephone: (248) 987-8929
solomonradner@kaltmanlaw.com

*Attorney for Plaintiff*


Devon M. Jacob, Esq.
PA BAR # 89182
Jacob Litigation, Inc.
P.O. Box 837
Mechanicsburg, Pa. 17055-0837
Telephone: (717) 796-7733
DJacob@jacoblitigation.com

*Local Counsel for Plaintiff*

14

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of June 2025, I served all opposing counsel with a copy of the foregoing document, by filing same with the Clerk of Court using the CM/ECF system which will send notification of such filing electronically to all counsel of record.

*/s/ Solomon Radner*

Solomon Radner, Esq.