## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AISLIN MAGALENGO, | : | |
| | : | |
| Plaintiff, | : | No. 2:25-cv-00325-WB |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA INTERSCHOLASTIC | : | |
| ATHLETIC ASSOCIATION, INC., | : | |
| QUAKERTOWN COMMUNITY SCHOOL | : | |
| DISTRICT and COLONIAL SCHOOL DISTRICT, | : | |
| | : | |
| Defendants. | : | |

### REPLY BRIEF BY THE QUAKERTOWN COMMUNITY SCHOOL DISTRICT

Defendant Quakertown Community School District ("Quakertown") hereby replies to the Plaintiff's Response to Defendant Quakertown Community School District's Motion to Dismiss the Amended Complaint (the "Plaintiff's Response"). [ECF 43]

### ARGUMENT

**A.     The Plaintiff's Response Contains Assertions of Fact That Are Not Contained in the Amended Complaint.**

The Plaintiff's Response contains several arguments based on alleged facts that are not stated in the Amended Complaint. The following specific factual assertions appear in the Plaintiff's Response but are not mentioned in the Amended Complaint.

1.    The Plaintiff asserts that Quakertown  has a "policy allowing biological males into their facilities to compete in girl's high school sports[.]" (Plaintiff's Response,  p.2) There is no factual allegation in the Amended Complaint that Quakertown has such a "policy."

2.    The Plaintiff asserts that Quakertown "accommodate[ed] the [Colonial School District] policy *by hosting races* in which L.A. participated." (italics added) (Plaintiff's Response, pp.5-6)

3.    The Plaintiff asserts that her Amended Complaint "alleges that [Quakertown], through its faculty and administrators at Plymouth Whitemarsh High School permitted … L.A., to compete in girls' athletic events." (Plaintiff's Response, p.7)

4.    Plaintiff asserts that she "was subjected to competing against" L.A. multiple times and L.A. "finished ahead in some of the races." (Plaintiff's Response, p.5) There is no allegation in the Amended Complaint that L.A. finished ahead of Plaintiff in any race other than the September 11, 2024, cross-country race.[1]

5.    Plaintiff asserts that her Amended Complaint "alleges she was required to use shared locker rooms or bathrooms with a biological male athlete on QCSD [Quakertown.]" [sic] (Plaintiff's Response, p.8)

6.    Plaintiff claims that her Amended Complaint "alleges that she *lost races* and recognition as a direct result of the well-settled decisions and practices enforced by [Quakertown] … and its faculty to allow [L.A.] to race against her and use the locker rooms and bathroom." (italics added) (Plaintiff's Response, p.9)

7.    Finally, the Plaintiff claims that "[Quakertown's] policy of allowing biological male athletes into their facilities … deprived [her] of competitive titles, placements and potential scholarship opportunities[.]" (Plaintiff's Response, pp.2-3)

---

[1] Even if it were true that L.A. had finished ahead of Plaintiff "in some of the races," this would mean that L.A. did not finish ahead of Plaintiff in other races.

Simply stated, the assertions of fact above are not included in the Plaintiff's Amended

Complaint. The law in this Circuit is that a Plaintiff cannot introduce facts through a brief. One

Court said:

> [P]laintiffs may not assert additional facts not contained in the amended complaint by way of a brief. *See Pa. ex rel. Zimmerman v. Pepsico, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988) (holding that a party is not permitted to supplement an initial pleading by way of a brief in opposition to a motion to dismiss)

*Ewideh v. Kohl's Dep't Stores Carlisle Pa*., No. 1:20-cv-02342, 2022 U.S. Dist. LEXIS 92467, at

*3-4 (M.D. Pa. May 23, 2022).

### B.    Plaintiff Has Not Alleged Facts Sufficient To State a Title IX Claim Against Quakertown Community School District.

The Plaintiff's argument that Quakertown violated Title IX is based on the Plaintiff's

argument that Quakertown "accommodate[ed Colonial's] policy by hosting races[2] in which L.A.

participated." (Plaintiff's Response, pp.5-6) She makes this argument following a tortured and

selective reading of a regulatory provision under Title IX—specifically 34 C.F.R. § 106.41(c).

(Plaintiff's Response, pp.2-4) That section provides:

> **(c)** Equal opportunity. A recipient that operates or sponsors interscholastic, intercollegiate, club, or intramural athletics shall provide equal athletic opportunity for members of both sexes. In determining *whether equal opportunities are available* the Director will consider, among other factors:
>
>> **(1)** Whether the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes;
>> **(2)** The provision of equipment and supplies;
>> **(3)** Scheduling of games and practice time;
>> **(4)** Travel and per diem allowance;
>> **(5)** Opportunity to receive coaching and academic tutoring;
>> **(6)** Assignment and compensation of coaches and tutors;
>> **(7)** Provision of locker rooms, practice and competitive facilities;

---

[2] There was only one race at a Quakertown facility at which the transgender student raced against the Plaintiff.

**(8)** Provision of medical and training facilities and services;
**(9)** Provision of housing and dining facilities and services;
**(10)** Publicity.
Unequal aggregate expenditures for members of each sex or unequal expenditures for male and female teams if a recipient operates or sponsors separate teams will not constitute noncompliance with this section, but the Assistant Secretary may consider the failure to provide necessary funds for teams for one sex in assessing equality of opportunity for members of each sex.

34 C.F.R. 106.41(c)(1)-(10) (italics added).

It is crystal clear that this provision does not apply to a school district that hosts a competition. Similarly, it is equally evident that this provision has no applicability to a school district that does not control the team composition of another school district, nor to a school district with no control over the race.

### C.    Plaintiff Has Not Alleged Facts Sufficient To State an Equal Protection Claim Against Quakertown Community School District Pursuant to Section 1983.

The Plaintiff claims that Quakertown denied her Equal Protection by "allowing L.A. to compete" in girls' athletic events. (Plaintiff's Response, p.7.) However, Quakertown had no authority to permit or prevent L.A. from competing as a member of the Colonial teams. Quakertown had no influence over Colonial's adherence to the PIAA's rules, which, as the plaintiff acknowledges, govern high school athletics in Pennsylvania. (Amended Complaint [Doc. 33], at ¶ 5.) The Plaintiff's claims are solely based on her objection to the two PIAA policies and Colonial's application of them. Quakertown cannot be held liable under these circumstances, and the Plaintiff fails to cite any legal precedent that would support such a conclusion.

Recognizing these facts, Plaintiff strains to assert such claims against Quakertown through the use of such amorphous phraseology as: "QCSD [Quakertown ] upheld a policy" and "the PIAA policy as applied by QCSD." (Plaintiff's Response, pp.7-8.) There are no allegations in the

4

Amended Complaint to demonstrate what, in fact, Quakertown did to "uphold" the governing PIAA policies, or to "apply" them. Of course, to bring an Equal Protection claim pursuant to Section 1983 in any case, a plaintiff is required at this pleading stage to allege facts sufficient to identify *a policy or custom of Quakertown* that deprived her of any Fourteenth Amendment rights. This she has not done.[3]

### D.    The Court Should Abstain from Exercising Jurisdiction.

Largely ignoring the precedent cited by Quakertown, the Plaintiff responds to Quakertown's argument by stating that Quakertown has "point[ed] to no live dispute pending before a Pennsylvania state court or agency" to support its position that state regulations (protecting transgender students' rights in athletics) remain unsettled. (Plaintiff's Response, p.10.) But the Plaintiff cites no legal authority that an unsettled issue of state law must be pending before a state court for the abstention doctrine to apply.

The Plaintiff asserts that her "claims do not ask the Court to interpret the PHRA [Pennsylvania Human Relations Act.]" (Id.) However, the abstention doctrines are based on factors other than whether the Plaintiff asks the Court to interpret state law.[4] The Plaintiff cannot dispute the clear applicability of the regulations of the Pennsylvania Human Relations Commission ("the Commission") to this matter and she fails to explain how any relief can be awarded in her favor

---

[3] As the School District has laid out this argument in its Brief in Support of its Motion to Dismiss the Amended Complaint, it is not repeated here. (See, Doc. 31-1, at § C.)

[4] Plaintiff without explanation refers to this administrative process as an "ambiguous state law scheme."

without adversely affecting the rights of the Commission to enforce its regulations protecting the rights of transgender students.

Finally, the Plaintiff argues that "*Burford* abstention may only be applied in a suit for equitable relief. In this case Plaintiff is seeking damages." (Plaintiff's Response, p.10) Plaintiff ignores paragraphs (j) and (k) of her "Prayer for Relief" in which she requests injunctive relief. (Amended Complaint [Doc. 33], pp.30-31.)

### E.    The Pennsylvania Human Relations Commission is a Necessary Party Pursuant to Fed.R.Civ.P. 19.

The Plaintiff's argument that the PHRC is not a necessary party under Fed.R.Civ.P. 19 is cursory and neglects the detailed legal argument and supporting citations elaborated upon in Quakertown's Brief. The Plaintiff provides a single legal citation that fails to support its argument, instead addressing the issue of abstention rather than the application of Fed.R.Civ.P. 19. The remainder of the Plaintiff's argument consists of only conclusory statements. The Plaintiff asserts that she "is not seeking to invalidate the PHRC's regulations or challenge its enforcement authority. Nor would any relief granted in this action bind or impair the PHRC's ability to administer the PHRA." (Plaintiff's Response, p.11.) Clearly, that is not the case.

[BALANCE OF PAGE LEFT BLANK INTENTIONALLY. CONCULSION AND SIGNATURE FOLLOWS.]

**CONCLUSION**

WHEREFORE, Quakertown's Motion to Dismiss Plaintiff's Amended Complaint should be granted.

<div style="margin-left:45%">

Respectfully submitted,

LEVIN LEGAL GROUP, P.C.

*/s/ James J. Musial*

</div>

Date:   June 17, 2025
<div style="margin-left:45%">

Michael I. Levin, Esquire
James J. Musial, Esquire
1800 Byberry Road, Suite 1301
Huntingdon Valley, PA 19006
Phone: 215.938.6378
mlevin@levinlegalgroup.com
jmusial@levinlegalgroup.com
Attorneys for Defendant,
*Quakertown Community School District*

</div>

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AISLIN MAGALENGO, : | |
| : | |
| Plaintiff, : | No. 2:25-cv-00325-WB |
| : | |
| v. : | |
| : | |
| PENNSYLVANIA INTERSCHOLASTIC : | |
| ATHLETIC ASSOCIATION, INC., : | |
| QUAKERTOWN COMMUNITY SCHOOL : | |
| DISTRICT, and COLONIAL SCHOOL DISTRICT,: | |
| : | |
| Defendants. : | |

**CERTIFICATE OF SERVICE**

James J. Musial, Esquire, one of the attorneys for Defendant Quakertown Community School District, hereby certifies that the foregoing Defendant's Reply Brief By The Quakertown Community School District was served on all counsel of record through the Court's Electronic Filing System on the below date and ia available for viewing and downloading.

Respectfully submitted,

LEVIN LEGAL GROUP, P.C.

/s/ *James J. Musial*
_____

Date:   June 17, 2025

Michael I. Levin, Esquire
James J. Musial, Esquire
1800 Byberry Road, Suite 1301
Huntingdon Valley, PA 19006
Phone: 215.938.6378
mlevin@levinlegalgroup.com
jmusial@levinlegalgroup.com
Attorneys for Defendant,
*Quakertown Community
School District*